**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**BROOKE BALCHAN,**

        **Plaintiff,**

  **-against-**


**NEW ROCHELLE CITY SCHOOL DISTRICT, THE**
**BOARD OF EDUCATION OF NEW ROCHELLE CITY**
**SCHOOL DISTRICT, COREY REYNOLDS, GAIL**
**JOYNER, TRACI JACKSON, JONATHAN RAYMOND**
**NATALIE ALI, Individually, and as Aiders and Abettors,**

        **Defendants.**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**AMENDED**
**VERIFIED**
**COMPLAINT**

**Index No:**

**JURY TRIAL DEMANDED**

Plaintiff, Brooke Balchan, by her attorneys, Gilbert Law Group.

## NATURE OF THE ACTION

  1.  This is a civil action seeking a declaratory judgment, equitable, and injunctive

relief, and compensatory, liquidated, and punitive damages, plus interest including, but not limited

to, reasonable accommodation, back pay, front pay, benefits, costs, expenses, and attorneys' fees,

and to otherwise be made whole, against the defendants for committing acts which violated the

United States and New York State Constitutions, federal and state law, rules, regulations, and

lawful procedures, and for committing acts which have deprived, and continue to deprive, plaintiff

of rights secured to her by such Constitutions, laws, rules, and regulations including, but not

limited to, the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000-e et seq., the Civil

Rights Act of 1991, the New York State Human Rights Law, Executive Law §290 et seq., New

York Civil Rights Law §40-c, all other common, federal and state laws, rules and regulations

promulgated thereunder, and any other cause of action which can reasonably be inferred from the facts set forth herein, to redress violations of plaintiff's rights as guaranteed by the laws of the United States and the State of New York. Additional causes of action include violations of New York State Labor Law § 201-d and violations of other statutory, Constitutional, civil, contractual, and common law rights. This complaint also seeks compensation for the plaintiff's severe and acute emotional distress, mental anguish, and psychological trauma under the above-enumerated Constitutional provisions, statutes, and common law.

2.     This action is brought for the purpose of seeking appropriate remedies for violation of plaintiff's Constitutional, statutory, and common law rights, including employment-based discrimination. Specifically, plaintiff's employer, including the above-named defendants, engaged in a continuing course of Constitutional violations, conduct and pattern of discrimination, harassment, and retaliation due to plaintiff's religion. The Constitutional violation include, but are not limited to, defendants acted to substantially burdened plaintiff's ability to freely exercise her sincerely held religious beliefs. The discrimination, harassment, and retaliation included, but are not limited to, taking adverse action against plaintiff due to her religion. The foregoing resulted in further pecuniary losses, injuries, and compensatory damages, which have continued to date. Plaintiff seeks all appropriate remedies including, but not limited to, the above-enumerated items, and all appropriate relief to which she is or may be entitled under the law.

**JURISDICTION AND VENUE**

3.     Jurisdiction is conferred on the Court by the aforementioned statutes and Constitutional provisions, as well as 28 U.S.C. §§1331, 1343, 2201, 2202, and 42 U.S.C. §§1981, 1983, 1985, and 1988, and 42 U.S.C Chapter 21B. This Court has supplemental jurisdiction over plaintiff's state and/or local law claims pursuant to 28 U.S.C. §1367.

4.     The basis of venue is that all parties reside and/or do business in Westchester County, and a substantial part of the events or omissions giving rise to this action occurred in this judicial district. 28 U.S.C. §1391(b),(c),(e).

## PARTIES

5.     Plaintiff Brooke Balchan ("Dr. Balchan" or "plaintiff") is an individual, a United States citizen, and "person" as defined in 29 U.S.C. §203(a), 29 U.S.C. §2000e(a), 42 U.S.C. §12111(7), and Executive Law §292(1). Dr. Balchan is also an "employee" as defined in 29 U.S.C. §2611(2)(A), and (3), 42 U.S.C. §12111(4), Article 14 of the New York Civil Service Law and Executive Law §292(6) who, at all relevant times, resides at 2 Cortlandt Avenue, New Rochelle, New York 10801.

6.     Defendant City School District of New Rochelle ("District") is an employer within the meaning of 29 U.S.C. §203(d), §2611(4)(A), (B), 42 U.S.C. §2000e(b), 42 U.S.C. 12111(5)(A), Article 14 of the New York Civil Service Law, and Executive Law §292(5). Defendants former Assistant Superintendent for Human Resources, Corey Reynolds ("Reynolds"), Assistant Superintendent for Student Support Services, Gail Joyner ("Joyner"), Executive Director for Human Resources, Traci Jackson ("Jackson"), former Superintendent of Schools, Jonathan Raymond ("Raymond") and former Principal Clerk, Natalie Ali ("Ali") are aiders and abettors within the meaning of New York Executive Law §292(6).

7.     Defendant District is also a municipal corporation and/or political subdivision of the State of New York, with offices located at 515 North Avenue, New Rochelle, New York 10801. Defendant District engages in an industry which affects commerce and, at all relevant times has employed at least fifteen (15) employees for twenty (20) or more calendar weeks in the current or

preceding calendar year. 42 U.S.C. § 2000e(b). Therefore, Defendant District is an "employer" within the meaning of the aforementioned and related laws, rules, and regulations.

8.    Defendant Corey Reynolds ("Reynolds" or "Assistant Superintendent for Human Resources") was promoted to Superintendent of Schools, effective July 1, 2023, from his former position as the Assistant Superintendent for Human Resources for the District, and is sued herein in his individual and official capacities for having intentionally and/or willfully directed, participated in, and/or condoned a course of conduct giving rise to the instant complaint.

9.    Defendant Gail Joyner ("Joyner" or "Assistant Superintendent for Student Support Services") is the Assistant Superintendent for Student Support Services for the District, and is sued herein in her individual and official capacities for having intentionally directed, participated in, and/or condoned a course of conduct giving rise to the instant complaint.

10.    Defendant Traci Jackson ("Jackson" or "Executive Director  for Human Resources") is the Executive Director for Human Resources for the District, and is sued in her individual and official capacities for having intentionally directed, participated in, and/or condoned a course of conduct giving rise to the instant complaint.

11.    Defendant Jonathan Raymond ("Raymond" or "Superintendent"),  is the former Superintendent of Schools for the District, resigned as of June 30, 2023, and is sued in his individual and official capacities for having intentionally directed, participated in, and/or condoned a course of conduct giving rise to the instant complaint.

12.    Defendant Natalie Ali ("Ali" or "Principal Clerk") was promoted to Senior Data Manager from her former position as a Principal Clerk for the District, effective February 21, 2023, and is sued in her individual and official capacities for having intentionally directed, participated in, and/or condoned a course of conduct giving rise to the instant complaint.

13.     The Board of Education, is the duly elected governing body of the District, and is comprised of the Board President, eight (8) additional Board Members, including William Iannuzzi, Adina Berrios Brooks, Margaret E. Bavosa, Katie Castellano Minaya, Makeda Lewis, David Peters, Roshanie Ross, Don Vega, Valarie D. Williams,, and Board Clerk, Millie Bonilla, all of whom are sued herein in their individual and official capacities for having intentionally directed, participated in, and/or condoned a course of conduct giving rise to the instant complaint.

14.     At all relevant times, the above-named and additional individuals, representatives and agents of defendant District (collectively, "defendants" or "the District") intentionally directed, participated in, condoned, and/or were involved in the events alleged in this complaint.

## ADMINISTRATIVE PROCEDURES

15.     All conditions precedent to filing suit have been fulfilled. Plaintiff timely initiated this action by filing a complaint with the Equal Employment Opportunity Commission ("EEOC").[1] (EEOC Charge No. 16GC300148)

16.     Plaintiff requested that the EEOC dismiss her Charge so that she could pursue her claims in Court. The EEOC granted Dr. Balchan's request and issued to plaintiff a Notice of Right to Sue dated April 19, 2023. This action was filed within 90 days of plaintiff's receipt of the Notice of Right to Sue. Ex. 1.

17.     Plaintiff has exhausted all private, internal, administrative, and judicial prerequisites to the institution of this action.

## FACTS

---

[1] A Complaint was also filed with the New York State Division of Human Rights on October 9, 2022 which Dr. Balchan  also requested dismissal so that she could pursue her claims in
Court. The State Division granted plaintiff's request on December 29, 2022.

18.     Dr. Balchan has been employed as a Medical Director by the defendants District and its Board of Education since in or around July 2017, a period of approximately six years. At all relevant times, Dr. Balchan was qualified for her position.

19.     Dr. Balchan is a board-certified pediatrician, licensed to practice medicine in New York since or around 2009, a period of approximately fourteen years.

20.     Dr. Balchan was recognized on or about January 17, 2023, by George Latimer, Westchester County Executive, for her "unparalleled exhibitions of professional diligence and conviction" and as "an outstanding physician and citizen, whose work as the Medical Director/School Physician for the City School District of New Rochelle, NY, is a reflection of her humanitarian spirit, and she continues to give the health and safety of Westchester county school children her utmost devotion and attention."

21.     On or about January 29, 2021, following a FMLA-qualifying medical leave, Dr. Alex Marrero, the former interim-superintendent, administratively reassigned Dr. Balchan to home pending the results of a fitness for duty examination. When the results cleared Dr. Balchan to return to work, Dr. Marrero refused to reinstate Dr. Balchan to her normal role without justification.

22.     On or about February 5, 2021 Mr. Gus Mountanos, attorney for the defendant District, communicated with Elizabeth Hunter, Dr. Balchan's former attorney, indicating that Dr. Balchan was found "fit for duty" and "didn't do anything professionally improper' or against her medical license. Although, Mr. Mountanos refused to let Dr. Balchan return to her position as Medical Director.

23.     When Raymond commenced his role as Superintendent on or about July 2021, he did not meet with Dr. Balchan, but kept her reassigned to home without explanation.

24.     On or about May 31, 2022, the Board of Education voted to charge Dr. Balchan with disciplinary charges pursuant to Civil Service Section 75 disciplinary hearing, based on allegations of incidents which allegedly took place on or about December 4-5, 2020.

25.     As per the disciplinary charges, defendants sought to terminate plaintiff from her employment as Medical Director.

26.     A Section 75 Hearing took place June 30, 2022, which was presided over by Hearing Officer, Kenneth Bernstein, Esq. ("Hearing Officer" or "H.O. Bernstein").

27.     H.O. Bernstein issued a Report of Findings and Recommendation, constituting nearly 11-pages, single-spaced, dated August 8, 2022.

28.     H.O. Bernstein concluded, "The District seeks to terminate Dr. Balchan from her position. Such penalty under all of the circumstances presented would be so disproportionate to the offense committed as to be shocking to one's sense of fairness. Based on all of the circumstances presented, I find that the only appropriate outcome…is a reprimand."

29.     On or about September 12, 2022, Dr. Balchan received an email from Dr. Reynolds informing her that she was no longer suspended. Dr. Balchan was also directed to attend a meeting on or about September 19, 2022 to plan for her return to work.

30.     Dr. Balchan is a 10-month Districtwide administrator and is a member of the Administrative and Supervisory Associate ("A&S").  As stated in the A&S collective bargaining agreement, as a 10-month employee, Dr. Balchan is entitled to all teacher holidays and recesses.

31.     The 2022-23 District calendar lists the following days as holidays and recesses: Independence Day (Observed), Labor Day, Rosh Hashanah, Yom Kippur, Columbus/Indigenous People's Day, Veterans Day, Thanksgiving Recess, Christmas Day Observed, Holiday Recess, New Year's Day Observed, Martin Luther King, Jr. Day, President's Day, Mid-Winter Recess,

Spring Recess/Passover, Good Friday, Memorial Day, Juneteenth Observance. An additional day was added in observance for Eid al-Fitr based on the lunar cycle in April 2023.

32.    According to Mary Breslin, President of the New Rochelle FUSE (Federation of United School Employees), "holiday periods are considered Thanksgiving, December Holiday Recess, Winter and Spring Breaks." Therefore, it follows that all holiday periods are holidays and recesses, but all holidays and recesses are not necessarily holiday periods.

33.    As per Article 1.08:04(D) of the A&S contract, "Leaves of absence with pay shall not be granted under B above for the day immediately preceding or immediately following a holiday ***period*** except for personal illness or death in the immediate family, unless prior approval is received from the Superintendent of Schools." *Emph added*. Therefore, during the 2022-23 school year, prior approval from the Superintendent of Schools would only be required for leave requests on the following days: November 23 and 28, 2022 (Thanksgiving Recess), December 23, 2022 and January 3, 2023 (December Holiday Recess), February 17 and 27, 2023 (Mid-Winter Recess), and March 31 and April 10, 2023 (Spring Recess).

34.    Employees are permitted to take personal days immediately preceding or following a holiday, not including Thanksgiving, December recess, Winter break, and Spring break, if it is properly entered into the AESOP absence management system for supervisor approval. Employees are not required to obtain prior approval from the Superintendent for those days.

35.    According to the A&S collective bargaining agreement, in addition to teacher holidays and recesses, 10-month employees can also take a leave of absence up to six days each school year. Such leaves of absence shall be granted for several reasons, including, "Time necessary to conduct personal affairs which cannot normally be handled outside working hours, such as, performance of religious obligations. . ."

36.    The district fails to maintain an employee handbook. There are no written protocols for staff or supervisors to follow for processing personal leave requests. There is no formal complaint procedure.

### *Plaintiff's Sincerely Held Religious Beliefs*

37.    Dr. Balchan is an Ashkenazi Jewish woman. Dr. Balchan has deeply and sincerely held religious beliefs, which have evolved throughout the course of her lifetime.

38.    Although Dr. Balchan considers herself a practicing Jewish woman, Dr. Balchan does not currently claim to follow any strict interpretation of Judaism.

39.    Dr. Balchan is devout in her religious beliefs. Her religious beliefs have consistently been at the forefront of all the most important events in her life as well as her family.

40.    Although Dr. Balchan was raised Jewish, she was also raised with various unique religious beliefs. For example, Dr. Balchan's mother was a devout believer in and taught Dr. Balchan that the universe presents "signs," coded with significant meaning.

41.    In 1993, after studying the Torah, Dr. Balchan became a Bat mitzvah. Dr. Balchan's siblings also became Bar and Bat mitzvahs.

42.    In 2000, Dr. Balchan reconnected with Judaism when she traveled to Israel as part of Birthright. Dr. Balchan's Birthright trip was a life changing experience that re-affirmed her connection to her Jewish faith.

43.    As an adult, Dr. Balchan has continued to develop her personal deeply held Jewish beliefs.

44.    As part of her Jewish beliefs, Dr. Balchan observes Jewish holidays including, but not limited to the Days of Awe, Rosh Hashanah and Yom Kippur.

45.    Dr. Balchan was raised to observe Rosh Hashanah and Yom Kippur in the manner practiced by her ancestors in Szydlowiec, Poland.

46.    Between the High Holy Holidays of Rosh Hashanah and Yom Kippur, Dr. Balchan observes the Yamim Nora'im or Days of Awe also known as "The 10 Days of Repentance."

47.    The "ten days of repentance" or "the days of awe" include Rosh Hashanah, Yom Kippur and the days in between, during which time Jews meditate on the subject of the holidays and ask for forgiveness from anyone they have wronged.

48.    It is held that, while judgment on each person is pronounced on Rosh Hashanah, it is not made absolute until Yom Kippur. The Ten Days are therefore an opportunity to mend one's ways in order to alter the judgment in one's favor.

49.    Dr. Balchan's religious upbringing informed her sincerely held religious beliefs. However, her personal scheme of things religious evolved over the course of her life, impacted by her experiences.

50.    In 2010, Dr. Balchan married her husband, Mr. Balchan. Mr. Balchan is from Trinidad and Tobago. They were wed in Trinidad and Tobago.

51.    From that point forward, Trinidadian culture and beliefs became a part of Dr. Balchan's identity. As a result, Dr. Balchan melded many of her Jewish religious beliefs into her new Trinidadian identity.

52.    At their wedding reception, Dr. Balchan and her husband danced the Hora, a traditional dance performed at Jewish weddings. Dr. Balchan bathed in the Caura River in her wedding gown. Later, Dr. Balchan and her husband would name their daughter after the Caura River.

53.    The year 2014 was very significant for Dr. Balchan as it relates to her family and religious evolution.

54.    In 2014, Dr. Balchan gave birth to twins. They were high risk, mono mono twins with one placenta and one amniotic sac. Their chance of survival was very low. Her twins ultimately survived the ordeal, and she credits her Jewish faith for helping her persevere. One month later, Dr. Balchan's husband suffered a heart attack.

55.    When Dr. Balchan's twins were 3-months old, Dr. Balchan's mother hosted their baby naming ceremony. In the Jewish faith, a baby naming ceremony is held after a baby is born and is designed to enter the baby into a covenant with God.

56.    Following that turbulent 2014 year, in 2015, Dr. Balchan felt a need to get away, rehabilitate mentally, and reconnect herself with God. Dr. Balchan attended a spiritual retreat in Vermont. The spiritual retreat utilized nature, harmony, horses, and yoga to therapeutically heal religiously and spiritually. This retreat was extremely beneficial for Dr. Balchan as it caused her to connect to many of the same feelings she experienced during her time in Israel.

57.    Due to this positive, enriching, and healing experience, Dr. Balchan incorporated these types of experiences into her Jewish religious practices.

58.    In 2016, Dr. Balchan's mother was diagnosed with pancreatic cancer. To cope with this harsh reality, Dr. Balchan again went on a religious journey to Vermont.

59.    During these times, Dr. Balchan's family developed a religious connection to water.

60.    In 2017, Dr. Balchan's brother rushed to get married so that their mother could be there for his wedding. Due to their spiritual connection to water, Dr. Balchan's brother's reception was held at the same lakefront restaurant that their mother used for her wedding.

61.     In 2017, for their wedding anniversary, Dr. Balchan and her husband went paddling at night and horseback riding to reconnect. Again, these experiences were directly connected to Dr. Balchan's sincerely held religious beliefs.

62.     In 2018, Dr. Balchan and her cousin went on a spiritual retreat to Acadia National Park. They participated in meditative paddleboard sessions and hikes with yoga. Given the trauma Dr. Balchan's family had been coping with due to her mother's illness, this was a very therapeutic religious experience for Dr. Balchan.

63.     In 2019, Dr. Balchan's sister was married. Her ceremony was held outdoors, at the same beach/lake in the Poconos, which had hosted other religious ceremonies for her family.

64.     In 2022, Dr. Balchan's daughter was born. She was named Caura, after the Caura River in Trinidad. Dr. Balchan and her husband chose the name Caura because it is "of water." Dr. Balchan's first name, Brooke, is also "of water." Therefore, by naming Dr. Balchan's daughter Caura, she was spiritually linked to Dr. Balchan. Her middle name is Sadoja, after her two grandmothers and great grandmother (Suzan, Dolsie, Jassodra). In Judaism, it is common for babies to be named after deceased ancestors.  As a result, the name Caura Sadoja reflects Dr. Balchan's religious identity, which has evolved as a result of the foregoing experiences.

65.     Dr. Balchan's daughter brought her and her family a strong connection to their lost loved ones. The last place they had all been together was Trinidad and Tobago in 2010.

66.     Dr. Balchan was aware that there had been a Jewish settlement in Trinidad and Tobago during World War II. It was extremely important to Dr. Balchan to raise her children with understanding of their Jewish and Trinidadian identity.

67.     Dr. Balchan's youngest daughter's Jewish name is Shafira Yara Ditza after Dr. Balchan's late mother, grandfather and mother-in-law.  The name Yara means water lady,

butterfly, bright light, blessing. Dr. Balchan has incorporated each component of her unique religious beliefs into the naming of her children.

**Dr. Balchan Experiences Religious Discrimination when Requesting Personal Leave**

68.    Defendants alleged unlawful conduct during the 2020, 2021, 2022 years, as well as the circumstances surrounding and giving rise to the § 75 disciplinary proceeding, caused Dr. Balchan extreme emotional distress.

69.    After being brought up on § 75 disciplinary charges in June 2022, Dr. Balchan believed she would be unlawfully terminated from employment by defendants. Dr. Balchan believed she needed to go on a religious retreat during Yamim Nora'im to meditate and consider changing careers.

70.    As previously alleged, Dr. Balchan had been subjected to extreme emotional distress. As such, she needed to address the trauma to which she had been subjected in the only way she knew how. She scheduled a religious trip with her family to Trinidad and Tobago during Yamim Nora'im.

71.    Rosh Hashanah, the first high holy day, is the Jewish New Year. Rosh Hashanah begins a ten-day period of penitence culminating in Yom Kippur.

72.    During Yom Kippur, the second high holy day, an observer tries to amend their behavior and seek forgiveness for wrongs done against God and against other human beings. At the end of Yom Kippur, one hopes that they have been forgiven by God.

73.    Dr. Balchan planned a trip with her family to her husband's homeland, Trinidad and Tobago, during the Yamim Nora'im or the Days of Awe.

74.     At the time she planned the trip, Dr. Balchan was facing spurious allegations, on which defendants were attempting to base her termination at a Civil Service Law Section 75 hearing.

75.     Dr. Balchan's personal scheme of things religious required that she take personal leave during Yamim Nora'im to adjust, meditate, repair her connection to G-d, and re-focus after being subjected to such a traumatic and turbulent course of events by defendants.

76.     The timing of Dr. Balchan's planned trip was deliberate, and religious in nature, given its relation to the Jewish high holy days and what she had been experiencing in her personal and professional life at the time.

77.     On September 12, 2022, Dr Balchan had a balance of six (6) personal leave days available for her to use. Dr. Balchan accessed the electronic AESOP management system after being notified that she was no longer suspended and entered five personal days (September 22, 23, 28, 29, and 30 of 2022). Dr. Balchan confirmed that these days were not days designated as a holiday period under the collective bargaining agreement. In Dr. Balchan's request, she specified that the days were being taken for "religious observance" during "pre-planned travel abroad."

78.     This trip had significant spiritual and religious significance for Dr. Balchan and her family. It was meant to spiritually and mentally prepare Dr. Balchan to either return to work or transition to a new career after going through a traumatic and hostile disciplinary proceeding.

79.     On September 19, 2022, Dr. Balchan had a scheduled meeting to plan for her return to work.  Those present in this meeting included Superintendent Raymond and members of his cabinet: Assistant Superintendent for Human Resources, Dr. Corey Reynolds; Executive Director for Human Resources, Traci Jackson; Assistant Superintendent of Student Support Services, Dr. Gail Joyner; as well as Administrative and Supervisory Union President, Melissa Passarelli.

During this meeting it was agreed upon that Dr. Balchan would not return to work until Monday October 3, 2022. Although these days had not yet been electronically approved, Dr. Reynolds stated that the personal leave "won't be a problem."

80.      On September 21, 2022, the evening prior to Dr. Balchan's travel, Dr. Reynolds sent an email stating, "to the extent that you wish to use these days for purposes of a vacation, your request is denied." Dr. Balchan's leave was not taken for purposes of a vacation. Inasmuch as Dr. Balchan specifically notified defendants at the time she applied for the leave that the leave requested was for religious observance, Dr. Reynold's email and subsequent actions demonstrated he discriminatorily judged plaintiff's religion as illegitimate.

81.      On September 28, 2022, during her religious observance, Dr. Balchan responded to Dr. Reynolds's email stating: "I did not request 'personal days' to take vacation. Making assumptions about how I intend to use these days is uncalled for. You should be aware that I am a Jewish woman with a young family. The Jewish New Year, Rosh Hashanah, as well as Yom Kippur on 10/5, represents the holiest days of the year for Jewish people. This is a time of reflection for the year that has passed and for setting goals for the year to come. This time is very sacred for me, especially during this time of transition. Additionally, I have personal business to tend to over the days I requested. I do not deserve to be discriminated against for my religion or my need to plan for my family."

82.      On October 2, 2022, Dr. Balchan received a lengthy reply where Dr. Reynolds accused her of being "unprofessional," "adversarial," "combative," and a liar. In said email, Dr. Reynolds admitted that Dr. Balchan's return to work date was October 3, 2022, and that date was agreed upon at the September 19, 2022 meeting. After his last email to Dr. Balchan at 10:50 p.m., Dr. Reynolds forwarded the entire email chain to his "Team," consisting of District counsel, Mr.

Mountanos and Ms. Lucas. Dr. Reynolds wrote that he "felt the need to respond," despite remaining silent for four days after Dr. Balchan's last email.

83.    On October 3, 2022, Dr. Balchan returned to work as planned.  Before the end of the workday, Dr. Balchan received a hand-delivered letter from Dr. Reynolds' office.  This letter directed her to attend a meeting, presumed to be disciplinary in nature, with union representation on Friday, October 7, 2022. Dr. Reynolds did not give a rationale for the meeting to Dr. Balchan or to her union in advance of the meeting. Failure to provide such rationale conflicted with plaintiff's rights to an agenda under the collective bargaining agreement.

84.    On October 7, 2022, Dr. Balchan met with Dr. Reynolds, Traci Jackson and Union President, Melissa Passarelli. The meeting was about Dr. Balchan's recent leave request. During the meeting, Dr. Reynolds engaged in an aggressive barrage of discrimination and harassment. Dr. Balchan expressed that she followed procedures for requesting personal days. Dr. Balchan provided the explicit rationale for the religious importance of her personal leave request. Dr. Balchan also provided evidence of electronic AESOP approval for the requested days by her supervisor, Dr. Joyner. Dr. Reynolds deliberately ignored Dr. Balchan's explanations and continued to harass Dr. Balchan acting in concert by defendants, barraging her with a lengthy, intrusive series of scripted questions that violated her sincerely held religious beliefs. Although Dr. Reynold's questions were unnecessary, unhelpful, and served no legitimate purpose, Dr. Balchan did her best to be responsive.

85.    During this meeting, Dr. Balchan began to feel uncomfortable and stated that she felt "intimidated," "in a hostile environment," and "threatened." Due to Dr. Reynolds' insensitivity and hostility, Dr. Balchan stated that her "stress reaction is activated" making it "very hard to listen to anything that anybody is speaking about." Dr. Reynolds was talking over Dr. Balchan as she

asked multiple times, each with an increasing sense of urgency, to be provided a break and adjourn the meeting. Dr. Reynolds summarily refused, increased his hostilities, and directed Dr. Balchan that she must allow him to complete his questioning. Ms. Jackson sat in silence, doing nothing to intervene.

86.     On or about October 7, 2022, Dr. Reynolds continued to target Dr. Balchan. He sent an email in which he stated, "I am directing you to provide any and all documentation that you have concerning your trip to Trinidad and Tobago and the performance of your religious obligations and/or personal business that you tended to during this time. This documentation should include: evidence of when this trip was scheduled, where the performance of your religious obligations took place, and the hours that you performed these religious obligations." These questions were entirely unnecessary, served no legitimate purpose, intrusive, and meant to intimidate and ridicule.

87.     Other similarly situated employees who took leave immediately preceding and/or immediately following holidays were not required to provide the defendant District with such intrusive information.

88.     On or about October 9, 2022, Dr. Balchan had a conversation in her office with her supervisor, Dr. Joyner, and a colleague, Toni Abraham. During this meeting, Dr. Joyner informed Dr. Balchan that she was instructed to "unapprove" the requested personal days she had previously approved on AESOP.

89.     On or about October 9, 2022, Dr. Balchan sent an email to Superintendent Raymond and the Board of Education to file a complaint against Dr. Reynolds for religious discrimination and retaliation.

90.     On or about October 9, 2022, Dr. Balchan filed a complaint with the New York State Division of Human Rights ("SDHR") and the Equal Employment Opportunity Commission ("EEOC") based on religious discrimination.

91.     On or about October 11, 2022, Dr. Balchan received an email from Dr. Joyner, that denied the previously approved leave time for religious observance. Plaintiff received multiple subsequent emails from Dr. Joyner retroactively "unapproving" the leave plaintiff requested for religious observance, that had been previously approved by Dr. Joyner. As previously alleged, Dr. Joyner admitted to plaintiff, on or about October 9, 2022, that she had been directed to retroactively "unapprove" said request for leave.

92.     On or about October 13, 24, 26 and 27 of 2022 Dr. Balchan requested Superintendent Raymond assign an alternate Human Resources administrator to handle her personnel matters. Dr. Balchan communicated that her requests were due to the ongoing retaliation to which she was subjected by Dr. Reynolds. Superintendent Raymond did not provide an alternative solution and Dr. Reynolds remained directly involved.

93.     On or about October 25, 2022, Superintendent Raymond appointed Edward McCarthy, also from Ingerman Smith, to investigate Dr. Balchan's religious discrimination complaint. As previously alleged, the Ingerman Smith firm had recently unsuccessfully prosecuted Section 75 disciplinary charges against Ms. Balchan, had been actively investigating Dr. Balchan's use of personal days and directing defendants' actions regarding same. As a result, Dr. Balchan objected to Ingerman Smith's involvement in any investigation on the basis that there was a clear conflict of interest.

94.     On or about October 26, 2022, Dr. Joyner intentionally interfered with Dr. Balchan's ability to connect with her subordinate staff. In an email to staff, Dr. Joyner stated: "Be

advised you are not to attend any meeting other than the ones that FUSE and my office agreed upon and were sent to you via the meeting schedule for the year. Additionally, you are directed not to send any information to Dr. Balchan. If there is a request to be filed, it will be addressed via my office."

95.     On or about October 27, 2022, Dr. Balchan emailed the Superintendent and defendant Board requesting that the discrimination and harassment cease, as it was interfering with her ability to effectively perform the duties of her position.

96.     On or about October 28, 2022, Dr. Balchan had a supervisory meeting with Dr. Joyner, and attended with a union representative, Ms. Tiara Reyes-Vega. Dr. Balchan requested Ms. Reyes-Vega attend the meeting out of fear of reprisal, retaliation, and further discrimination and harassment. Dr. Balchan and Dr. Joyner both recorded the meeting. At the meeting, Dr. Joyner alleged that Dr. Balchan was "misusing positional power" when she asked subordinate staff about what they were working on. The meeting ended abruptly when Dr. Joyner refused to answer questions regarding timekeeping for subordinate staff.

97.     On or about October 29, 2022, Dr. Balchan contacted the Board of Education to check the status of the religious discrimination she had reported to the Superintendent, as three weeks had passed. Dr. Balchan also included an audio recording from the meeting on October 7, 2022.

98.     On or about November 4, 2022, Dr. Balchan attended a team meeting, led by Dr. Joyner and four other directors in the Student Support Services team. During the meeting, Dr. Balchan learned that Dr. Joyner was giving other directors the opportunity to schedule additional meetings with their staff, without granting Dr. Balchan the same courtesy. Dr. Joyner singled out

Dr. Balchan and told her to leave upon finding out she was recording. Dr. Balchan was continually harassed and targeted by Dr. Joyner.

99.    On or about November 9, 2022, the Superintendent issued a Districtwide notice prohibiting all staff from recording anything throughout the workday. This act was meant to publicly target, isolate, and ridicule Dr. Balchan amongst her peers.

100.    On or about the dates of November 16, 18, 30 and December 2, 2022, Dr. Balchan continued to request clarity from Dr. Joyner regarding the department's structure and chain of command, to no avail.

101.    On or about the dates of December 6, 16, 20, 22, 2022 and January 3, 2023, Dr. Balchan requested assistance from Dr. Joyner, Ms. Jackson and Superintendent to address concerns regarding Ms. Natalie Ali, Dr. Balchan's principal clerk. Ms. Natalie Ali had circumvented Dr. Balchan and was granted approval by Dr. Joyner and/or Dr. Reynolds to perform tasks outside of her position.

102.    On January 3, 2023, Dr. Reynolds reassigned Ms. Ali to Dr. Joyner's supervision, effective January 4, 2023. On February 20, 2023, Ms. Ali was given a promotion in a different department with a pay raise; however, as of March 10, 2023, she was permitted by Dr. Joyner to continue performing the same tasks she previously performed in the Health Services department. This created confusion within the Health Services department and Dr. Balchan was unable to fully onboard the newly hired staff.

103.    Defendants' action as it relates to Ms. Ali were deliberate in nature and designed to undermine Dr. Balchan' authority and ability to perform her duties as Medical Director.

104.    On or about January 23, 2023, Dr. Balchan received a letter from Superintendent indicating that Mr. McCarthy, from Ingerman Smith, was to continue investigating the allegations

of harassment, despite Dr. Balchan's prior requests for Ingerman Smith to recuse itself and/or be replaced due to the conflict of interest.

105.    On or about March 1, 2023, Dr. Balchan learned that her New York State Division of Human Rights had not been uploaded into the EEOC database. Due to a delay in obtaining an EEOC right to sue letter in federal court, Dr. Balchan chose to pursue remedies in state court.

106.    On or about March 9, 2023, Dr. Balchan received a certified letter from Mr. McCarthy, dated March 7, 2023, detailing the results of his investigation into her religious discrimination and harassment complaints. Mr. McCarthy reported that he found no fault by either Dr. Reynolds or Dr. Joyner. Mr. McCarthy also wrote, "Additionally, please allow this correspondence to also expressly confirm that any acts of retaliation by you against any participants of this investigation, constitutes a violation of State and federal law, and a violation of the Board of Education policy. Please be mindful of the foregoing at all times in the future." This was done to intimate and harass Dr. Balchan. His letter served no purpose other than to illegitimately discredit Dr. Balchan and manufacture a pretext on which defendants could base disciplinary action.

107.    On or about March 14, 2023, Dr. Balchan filed a complaint in Westchester County Supreme Court. Defendants Dr. Reynolds, Dr. Joyner and Ms. Jackson were individually served on that date. Dr. Reynolds accepted service on behalf of Mr. Raymond and the Board of Education.

108.    On or about March 15, 2023, Dr. Joyner directed Dr. Balchan to report to her office without an explanation. Dr. Joyner and Ms. Jackson were present for this meeting. Dr. Balchan requested union representative for the meeting, but Dr. Joyner refused. Dr. Balchan was informed that she would be removed from all her current duties and banned from the District property, effective immediately without an explanation. Dr. Balchan was also directed not to speak to staff

about her removal and was escorted out of the building by Ms. Jackson. Once home, Dr. Balchan found that her access to work email was disabled.

109.    Defendants' directive that she not communicate with co-workers regarding her removal is a violation of New York Labor Law as it prevented Dr. Balchan from engaging in protected concerted activity.

110.    On or about March 27, 2023, plaintiff amended her state complaint to incorporate the relation she experienced after filing  the initial complaint on March 14, 2023.

111.    On or about April 11, 2023, Superintendent obtained approval from the Board of Education, to suspend Dr. Balchan without pay for thirty days pending a disciplinary hearing to bring Civil Service Section 75 charges. Defendants sought to bring charges against plaintiff to target and discriminate against her sincerely held religious beliefs and observances.

112.    All of the foregoing allegations regarding adverse actions constitute a pattern and practice of retaliation and discrimination because plaintiff attempted to take personal leave during the Days of Awe and the high holy Jewish holidays.

113.    As previously alleged, plaintiff was not supposed to return to work until October 3, 2022. Nonetheless, defendants executed a premeditated agenda of acute discrimination, retaliation and harassment because plaintiff took contractually entitled personal leave in during Yamim Nora'im in September 2022, in observance of her sincerely held religious beliefs.

114.    On or about April 11, 2023, Dr. Balchan discovered that the District had violated her privacy. Dr. Balchan found that Dr. Reynolds had discussed matters related to her employment with Ms. Natalie Ali. Ms. Natalie Ali contacted a mutual Trinidadian acquaintance, and obtained contrived details of Dr. Balchan's trip to Trinidad and Tobago. Defendants relied on this

information against Dr. Balchan numerous Section 75 disciplinary charges. In doing so, defendants castigated Dr. Balchan for her sincerely held personal religious beliefs.

115.    This invasion of Dr. Balchan's privacy caused severe emotional distress. Dr. Balchan planned that trip to pray and rehabilitate from the trauma to which she had been previously subjected to by defendants. The trip was of a religious nature. Defendants' invasion of Dr. Balchan's privacy and attempts to cast aspersions to terminate her are a violation of her state and federal Constitutional right to freely exercise her religion.

116.    Defendants' actions substantially burden Dr. Balchan's ability to freely exercise her religion.

117.    On or about April 19, 2023, Dr. Balchan received a notice from the EEOC of dismissal and right to sue.

118.    On or about April 27, 2023 Defendants filed a motion to dismiss Dr. Balchan's state lawsuit in its entirety.

119.    On or about May 1, 2023, Dr. Balchan notified Defendants of the EEOC right to sue by emailing their defense attorneys Mr. Epstein and Mr. Miranda at Miranda Slone Sklarin Vereniotis LLP. Mr. Epstein replied that they had "no desire to remove the matter to federal court at this time."

120.    On or about May 22, 2023, Dr. Balchan's husband, Mr. Balchan, sent an email to Superintendent and the Board of Education's President and Vice President, Mr. William Iannuzzi and Ms. Adina Brookes, requesting a safety transfer for their children out of the District. The Balchan family is fearful of the lasting impact of the Defendants' retaliation and harassment on their social-emotional wellbeing, level of participation in school activities, and academic achievement within the District.

121.    On or about May 24, 2023, Superintendent Reynolds replied to Mr. Balchan via email. In this email, the Superintendent denied their concerns regarding their children's' safety. It should be noted that Dr. Balchan is required to obtain written permission from the Superintendent before entering District property. The Superintendent also takes several hours to several days to respond to emails. As above described, defendants have created a hostile environment against Dr. Balchan that exposes her children to unsafe conditions . When Mr. Balchan requested home instruction for the remaining weeks of school, prior to a safety transfer being arranged, the Superintendent threatened that the District would report the Balchan family for education neglect if the children were not returned  to school.

122.    On or about June 1, 2023, plaintiff filed a Second Amended Complaint in Westchester County Supreme Court.

123.    On or about July 16, 2023, plaintiff filed a Notice of Voluntary Discontinuance pursuant to CPLR § 3217(a)(1), voluntarily discontinuing her state action without prejudice.

124.    On or about October 17, 2023, the defendant Board voted to terminate Dr. Balchan, effective immediately.

125.    In further retaliation for Dr. Balchan's protected activities, defendants have engaged in an ongoing pattern and practice of impugning plaintiff's reputation, to cast doubt on her credibility and irreparably harm her future employability.

**COUNT I**

**VIOLATION OF 29 U.S.C. §§ 1983 AND 1988 IN VIOLATION OF
THE FREE EXERCISE CLAUSE OF
THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION
AS AGAINST ALL DEFENDANTS**

126.    Plaintiff repeats and realleges every allegation as set forth in paragraphs "1" through "125" as if fully set forth herein.

127.    The defendants and each of their agents involved in the events and actions described above are persons acting under color of state law, and other statutes, ordinances, regulations, customs, or usages, as defined in 42 U.S.C. §1983.

128.    Plaintiff is a citizen of the United States as defined in §1983.

129.    New York State Commissioner for the Civil Service Department and the New York State Civil Service Department have delegated to the defendant Board the authority and power to implement disciplinary action against civil service employees for legitimate, valid reasons. However, any basis for discipline may not contravene the inalienable rights guaranteed in the United States Constitution.

130.    Plaintiff is an observant Jewish woman who practices her faith in a manner that is informed by her deeply held beliefs. Her religious beliefs are a scheme, personal to her and inextricably intertwined with her unique identity.

131.    As high-ranking officials with final authority, defendant Reynolds and the defendant Board has the duty of ensuring that the District acted in compliance with and does not impinge upon plaintiff's Constitutional right to freely exercise her religion.

132.    By voting to terminate Dr. Balchan based on the allegation that she took personal days to observe and exercise her religious beliefs during the Jewish high holy days Yamim Nora'im, the defendant Board invoked defendants' policy which deprived Dr. Balchan of her right to free exercise of religion by substantially burdening her religious exercise.

133.    Defendants repeatedly took adverse and/or hostile actions because plaintiff exercised her sincerely held religious beliefs.

134.    On or about April 11, 2023, the Superintendent obtained approval from the Board of Education to suspend Dr. Balchan without pay for thirty days. Defendants suspended plaintiff

and voted to bring her up on disciplinary charges because she exercised her sincerely held religious beliefs.

135.    The above-stated adverse actions, as taken by defendants against plaintiff, put substantial pressure on her to violate her beliefs.

136.    As detailed above, defendants' actions are part and parcel of an unlawful established state procedure to deprive plaintiff of her Constitutional right to freely exercise her religion.

137.    The right of District employees to not be discriminated against in employment because of a religion is a clearly defined constitutional and statutory right which reasonable officials in the District, including defendants and their agents, knew or should have known.

138.    The right to be free from retaliation resulting from reporting discrimination for practicing one's religion or faith is a clearly established constitutional and statutory right of which reasonable officials in the District, including defendants and their agents, knew or should have known.

139.    Defendants' policy and practice deprived plaintiff of her right to free exercise of religion by substantially burdening her religious exercise.

140.    Plaintiff's exercise of her religion did not burden defendants.

141.    Defendants' enforcement of its policy substantially burdens plaintiff's observation of her religious beliefs.

142.    Defendants acted to retroactively "unapprove" plaintiff's requested leave to observe the high holy Jewish holidays of Yamim Nora'im.

143.    On or about April 11, 2023, the defendant Board voted to suspend plaintiff for thirty-days without pay.

144. On or about April 11, 2023, the defendant Board voted to bring Section 75 disciplinary charges against plaintiff in pursuit of her discharge from employment.

145. The defendant Board voted to pursue Section 75 charges, the primary basis of which was plaintiff utilizing her contractual personal leave days off to observe the high holy Jewish holidays of Yamim Nora'im, Rosh Hashanah and Yom Kippur.

146. On or about October 17, 2023, the defendant Board voted to terminate Dr. Balchan, effective immediately.

147. Other than to deprive plaintiff of her right to free exercise of religion and/or to substantially burden her religious exercise, defendants had no rational basis to terminate Dr. Balchan.

### COUNT II
### VIOLATION OF 42 U.S.C. §§ 1983 & 1988
### STIGMA-PLUS VIOLATION OF THE FOURTEENTH AMENDMENT
### DUE PROCESS CLAUSE AS AGAINST ALL DEFENDANTS

148. Plaintiff repeats and realleges every allegation as set forth in paragraphs "1" through "147" as if fully set forth herein.

149. As alleged above, defendants unlawfully terminated Dr. Balchan, supposedly pursuant to Civil Service Law § 75, because of her religious beliefs and the protected activities in which she engaged.

150. Plaintiff was the Medical Director of the defendant District. Medical Director is a district-wide supervisory unclassified civil service title.

151. According to the applicable collective bargaining agreement entered into between the defendant District and FUSE, Dr. Balchan may not be terminated without just cause.

152.    The applicable collective bargaining agreement includes a grievance procedure under which a unit member may challenge a violation of the contract. Said grievance procedure supersedes Section 75 and culminates in arbitration.

153.    As a result, Dr. Balchan's employment is not subject to Section 75 and, accordingly, she did not participate in any Section 75 hearing.

154.    Nonetheless, on or about April 11, 2023, the defendant Board voted to proffer disciplinary charges in which defendants alleged *inter alia* that Dr. Balchan acted maliciously with intent to mislead when she filed a Verified Complaint with the Equal Employment Opportunity Commission in which she alleged discrimination.

155.    On or about April 11, 2023, the defendant Board voted to proffer disciplinary charges in which defendants alleged *inter alia* that Dr. Balchan acted maliciously with intent to mislead when she filed a Verified Complaint in New York State Supreme Court alleging discrimination.

156.    On or about April 11, 2023, the defendant Board voted to proffer disciplinary charges in which defendants alleged *inter alia* that Dr. Balchan acted maliciously with intent to mislead when she filed an internal complaint at the defendant District in which she alleged that Superintendent Reynolds had subjected her to religious discrimination and harassment.

157.    October 17, 2023, the defendant Board voted to terminate Dr. Balchan, effective immediately, based on the findings and recommendation of H.O. Bernstein.

158.    H.O. Bernstein's Report and Recommendation, which was entered into the record of the October 17, 2023, defendant Board meeting, included dozens of manufactured, spurious, defamatory and dehumanizing aspersions regarding Dr. Balchan, her ethics, morals, professionalism, and integrity.

159.    Even though Dr. Balchan was not present and did not participate in any hearing, H.O. Bernstein wrote in his report, "The Respondent's exaggerations, false characterizations and lies were front and center throughout the hearing…"

160.    Even though Dr. Balchan was not present and did not participate in any hearing, with regard to Dr. Balchan, H.O. Bernstein wrote in his report, "*Falsus in uno, falsus in omnibus* means 'false in one thing, false in everything.'"

161.    Even though Dr. Balchan was not present and did not participate in any hearing, with regard to Dr. Balchan, H.O. Bernstein wrote in his report, "'A liar will not be believed even when he speaks the truth.'"

162.    Even though Dr. Balchan was not present and did not participate in any hearing, H.O. Bernstein wrote in his report, "I find that Brooke Balchan is an alien to honesty and a stranger to truth."

163.    The Report and Recommendation includes detailed findings related the testimony of defendant Reynolds in which defendant Reynolds falsely stigmatizes and impugns Dr. Balchan's integrity and professionalism.

164.    The Report and Recommendation includes detailed findings related the testimony of defendant Jackson in which defendant Jackson falsely stigmatizes impugns Dr. Balchan's integrity and professionalism.

165.    On or about October 17, 2023, the defendant Board of Education voted to accept and adopt H.O. Bernstein's Report and Recommendation dated September 30, 2023, in its entirety, and terminate Dr. Balchan from her employment effective immediately.

166.    The defendant District's misrepresentations stigmatized Dr. Balchan by calling into question her good name, professional reputation, honor, and/or integrity

167.    Upon information and belief, both the false and spurious disciplinary charges and H.O. Bernstein's Report and Recommendation, which includes false and spurious misrepresentations and aspersions, have been placed in Dr. Balchan's personnel file and will be disclosed to potential future employers.

168.    The spurious language contained in the disciplinary charges and Report and Recommendation go to the very heart of Dr. Balchan's professional competence and drastically impair ger chance of receiving another supervisory position, thereby vitiating her liberty interest.

## COUNT III
## VIOLATION OF TITLE VII OF 42 U.S.C. 2000-e
## UNLAWFUL DISCRIMINATION BASED ON RELIGION
## AS AGAINST ALL DEFENDANTS

169.    Plaintiff repeats and realleges every allegation as set forth in paragraphs "1" through "168" as if fully set forth herein.

170.    As a woman of Jewish faith, plaintiff is a member of a protected class.

171.    At all relevant times, plaintiff has been qualified to perform her duties as Medical Director of City School District of New Rochelle.

172.    Defendants subjected plaintiff to pervasive harassment that permeated her workplace and altered the terms and conditions of her employment.

173.    Defendants deliberately undermined plaintiff's ability to perform her job duties, directed her subordinates to disregard any communication from plaintiff, and promoted Natalie Ali but directed that she continue to perform out-of-title work in order to undermine plaintiff's ability to perform her responsibilities and alter the terms and conditions of Dr. Balchan's employment.

174.   On or about April 11, 2023, the defendant Board voted to suspend plaintiff for thirty-days without pay.

175.   On or about April 11, 2023, the defendant Board voted to bring Section 75 disciplinary charges against plaintiff in pursuit of her discharge from employment.

176.   The defendant Board voted to pursue Section 75 charges, the primary basis of which was plaintiff utilizing her contractual personal leave days off to observe the high holy Jewish holidays of Rosh Hashanah and Yom Kippur.

177.   Notwithstanding plaintiff's compliance with relevant policies and procedures, defendants subjected plaintiff to multiple adverse actions, ultimately seeking plaintiff's termination.

178.   As alleged above, all of the alleged adverse actions are temporally proximate to plaintiff's exercise of her religious beliefs.

179.   On or about October 17, 2023, the defendant Board voted to terminate Dr. Balchan, effective immediately, the basis of which was plaintiff's exercise of her religious beliefs.

**COUNT IV**
**VIOLATION OF 42 U.S.C. §§ 2000-e**
**UNLAWFUL RETALIATION**
**AS AGAINST ALL DEFENDANTS**

180.   Plaintiff repeats and realleges every allegation as set forth in paragraphs "1" through "179" as if fully set forth herein.

181.   By consistently and repeatedly reporting to the Superintendent and the defendant Board of Education allegations that she was being subjected to unlawful discrimination, plaintiff engaged in protected activity under the Civil Rights Act of 1964.

182.    On October 9, 2022, plaintiff engaged in protected activity when she reported discrimination and harassment due to her religion to the Superintendent of Schools and the defendant Board of Education.

183.    As was alleged above, plaintiff repeatedly submitted verbal and written complaints of discrimination, harassment, and retaliation on the basis of her religion to her defendant supervisors, the defendant Superintendent, and the defendant Board.

184.    As detailed above, in retaliation for submitting complaints of discrimination, defendants subjected plaintiff to pervasive harassment that permeated her workplace and altered the terms and conditions of her employment.

185.    As detailed above, defendants deliberately acted to undermine Dr. Balchan's authority as medical director. They also directed her subordinates to not share needed information with her. Additionally, defendants promoted Ms. Ali as a reward for working to undermine Dr. Balchan. Following Ms. Ali's promotion, defendants directed her to continue to perform out-of-title duties that were historically within Dr. Balchan's domain. These actions were taken to undermine Dr. Balchan's authority as well as set her up to fail in performing her duties.

186.    On or about March 14, 2023, Dr. Balchan filed a complaint in Westchester County Supreme Court. The next day, March 15, defendants banned Dr. Balchan from the District property, effective immediately without an explanation, and disabled her access to work email was disabled.

187.    Dr. Balchan's Complaint alleged, *inter alia*, that defendants discriminated against her because of her religion.

188.    In retaliation for engaging in the above-described protected activities, on or about April 11, 2023, the defendant Board voted to suspend plaintiff for thirty days without pay and pursue her termination pursuant to Civil Service Law § 75.

189.    The disciplinary charges brought against Dr. Balchan allege, in words or effect, that she engaged in insubordination and misconduct because, after receiving approval, she utilized her earned accrued personal leave in order to observe the Jewish high holidays.

190.    According to the applicable collective bargaining agreement entered into between the defendant District and FUSE, Dr. Balchan may not be terminated without just cause.

191.    The applicable collective bargaining agreement includes a grievance procedure under which a unit member may challenge a violation of the contract. Said grievance procedure culminates in arbitration.

192.    Defendants served plaintiff with disciplinary charges seeking termination.

193.    In retaliation for Dr. Balchan engaging in the above-described protected activities, as well as filing the instant action, on or about April 11, 2023, defendants suspended plaintiff for 30-days without pay without just cause in violation of the applicable collective bargaining agreement.

194.    After receiving the disciplinary charges, on or about August 25, 2023, a grievance was filed on behalf of Dr. Balchan, challenging defendants' disciplinary charges seeking termination as lacking just cause.

195.    Following the completion of Dr. Balchan's improper 30-day suspensions, defendants refused to reinstate her to her position. Instead, in retaliation for the above-described protected activities and filing the instant action, defendants placed her back on payroll but at a lower rate of pay than that to which she was entitled.

196.    In retaliation for Dr. Balchan engaging in the above-described protected activates, as well as filing the instant action, on or about September 22, 2023, defendants again removed Dr. Balchan from payroll without due process in violation of the applicable CBA, denying her earned compensation, benefits, and other emoluments of employment.

197.    On or about October 17, 2023, the defendant Board voted to terminate Dr. Balchan, without cause, in violation of the applicable collective bargaining agreement. The basis for Dr. Balchan's termination was the practice of her sincerely held religious beliefs and in further retaliation for plaintiff's above-described protected activity.

## COUNT V
## VIOLATION OF 42 U.S.C. §§ 1983 AND 1988
## VIOLATION OF EQUAL PROTECTION CLAUSE
## AS AGAINST ALL DEFENDANTS

198.    Plaintiff repeats and realleges every allegation as set forth in paragraphs "1" through "197" as if fully set forth herein.

199.    As a woman of Jewish faith, plaintiff is a member of a protected class.

200.    At all relevant times, plaintiff has been qualified to perform her duties as Medical Director of City School District of New Rochelle.

201.    Plaintiff was subjected to disparate treatment because she exercised her Jewish faith.

202.    Plaintiff was subjected to multiple adverse actions because she utilized the accrued leave, which she had earned and to which was contractually entitled, in order to exercise and observe her religious beliefs.

203.    Defendants subjected plaintiff to pervasive harassment that permeated her workplace and altered the terms and conditions of her employment.

34

204.    Defendants deliberately undermined plaintiff's ability to perform her job duties, directed her subordinates to disregard any communication from plaintiff, and promoted Natalie Ali but directed that she continue to perform out-of-title work in order to undermine plaintiff's ability to perform her responsibilities and alter the terms and conditions of Dr. Balchan's employment.

205.    On or about April 11, 2023, the defendant Board voted to suspend plaintiff for thirty-days without pay.

206.    On or about April 11, 2023, the defendant Board voted to bring Section 75 disciplinary charges against plaintiff in pursuit of her discharge from employment.

207.    The defendant Board voted to pursue Section 75 charges, the primary basis of which, was plaintiff utilizing her contractual personal leave days off to observe the high holy Jewish holidays of Rosh Hashanah and Yom Kippur.

208.    On or about October 17, 2023, the defendant Board voted to terminate Dr. Balchan, without cause, in violation of the applicable collective bargaining agreement. The basis for Dr. Balchan's termination the practice of her sincerely held religious beliefs and in further retaliation for plaintiff's above-described protected activity.

209.    Plaintiff followed all required procedures in requesting permission to utilize her personal accrued leave to observe the Jewish holidays.

210.    Plaintiff received approval from her supervisor to utilize her accrued leave to observe the Jewish holidays.

211.    Plaintiff was entitled to be approved for personal leave pursuant to the applicable collective bargaining agreement.

212.    Notwithstanding plaintiff's compliance with relevant policies and procedures, defendants subjected plaintiff to multiple adverse actions, ultimately seeking plaintiff's termination.

213.    As alleged above, all of the alleged adverse actions are temporally proximate to plaintiff's exercise of her religious beliefs.

214.    As alleged above, inasmuch as defendants seek to terminate plaintiff for her exercise of her religious beliefs, the disciplinary charges brought against plaintiff by defendants were the direct result of plaintiff's exercise of her religious beliefs.

215.    As it relates to the unlawful discriminatory adverse actions taken by defendants against Dr. Balchan due to plaintiff's exercise of her religious beliefs, defendants subjected plaintiff to disparate treatment as compared to similarly situated employees who are not Jewish.

216.    Upon information and belief, District employee, Neela Sookdeo, a Registered Nurse who worked in a subordinate role to Dr. Balchan, took a personal leave day immediately preceding or following Thanksgiving 2021.

217.    Upon information and belief, Neela Sookdeo was subject to the same terms and conditions of employment, for purposes of taking personal leave, as plaintiff.

218.    Upon information and belief, Neela Sookdeo was not subjected to disciplinary or corrective action for utilizing personal leave immediately preceding or following Thanksgiving.

219.    Under the applicable collective bargaining agreement, Thanksgiving is considered a "holiday period." Therefore, Neela Sookdeo, was contractually required to request approval from the Superintendent before utilizing a personal leave day immediately preceding or following Thanksgiving.

220.    Unlike defendant District employee Neela Sookdeo, Dr. Balchan utilized a personal leave day immediately preceding or following Rosh Hashanah and/or Yom Kippur, which is not considered a "holiday period." Therefore, plaintiff should not have been required to request Superintendent approval for said leave.

221.    Unlike defendant District employee Neela Sookeo, Dr. Balchan was subjected to disciplinary action, suspended for thirty days without pay, and the defendant Board is seeking her termination for utilizing earned personal leave immediately preceding or following a holiday.

222.    Upon information and belief, District employee, Andrea Seltzer, a Registered Nurse who worked in a subordinate role to Dr. Balchan, took a personal leave day immediately preceding or following Martin Luther King, Jr. Day in January 2023.

223.    Upon information and belief, Andrea Seltzer was subject to the same terms and conditions of employment, for purposes of taking personal leave, as plaintiff.

224.    Upon information and belief, Andrea Seltzer was not subjected to disciplinary or corrective action for utilizing personal leave immediately preceding or following Martin Luther King, Jr. Day.

225.    Upon information and belief, two Registered Nurses, who worked in a subordinate role to Dr. Balchan, also took off October 11, 2022, the day after the Columbus Day holiday, Suzanne Flynn and Andrea Seltzer.

226.    Upon information or belief, another Registered Nurse working subordinate to Dr. Balchan, Maria Sanchez, took three personal days immediately following the Thanksgiving Holiday in 2022.

227.    Upon information or belief, none of the foregoing similarly situated individuals were subjected to disciplinary or corrective action by defendants for utilizing personal leave days immediately preceding or following a holiday.

228.    Plaintiff was subjected to the aforementioned selective treatment and/or disparate treatment because of her religious beliefs and/or because her use of her personal leave was for the purpose of observing and exercising her Jewish faith.

229.    Plaintiff was subjected to the aforementioned disparate treatment and adverse actions to punish and/or inhibit the exercise of her constitutional right to freely exercise her religious beliefs.

230.    Plaintiff was subjected to the aforementioned disparate treatment and adverse actions because defendants perpetrated and/or exercised a bad faith intent to injure and/or cause irreparable harm to plaintiff.

**COUNT VI**
**VIOLATION OF 42 U.S.C. §§ 1983 AND 1988**
**UNLAWFUL RETALIATION**
**AS AGAINST ALL DEFENDANTS**

231.    Plaintiff repeats and realleges every allegation as set forth in paragraphs "1" through "230" as if fully set forth herein.

232.    By consistently and repeatedly reporting to the Superintendent and the defendant Board of Education allegations that she was being subjected to unlawful discrimination, plaintiff engaged in protected activity under 42 U.S.C. §§ 1983 and 1988.

233.    On September 28, 2022, during her religious observance, Dr. Balchan responded to Dr. Reynolds's email stating: "I did not request 'personal days' to take vacation. Making assumptions about how I intend to use these days is uncalled for. You should be aware that I am a Jewish woman with a young family. The Jewish New Year, Rosh Hashanah, as well as Yom

Kippur on 10/5, represents the holiest days of the year for Jewish people. This is a time of reflection for the year that has passed and for setting goals for the year to come. This time is very sacred for me, especially during this time of transition. Additionally, I have personal business to tend to over the days I requested. I do not deserve to be discriminated against for my religion or my need to plan for my family."

234.     Dr. Balchan's September 28, 2022, email constitutes protected activity as it alleges in writing that plaintiff was being targeted because she was exercising her religious beliefs.

235.     On October 2, 2022, Dr. Balchan received a lengthy reply where Dr. Reynolds accused her of being "unprofessional," "adversarial," "combative," and a liar.  In said email, Dr. Reynolds admitted that Dr. Balchan's return to work date was October 3, 2022, and that date was agreed upon at the September 19, 2022 meeting.

236.     On October 3, 2022, Dr. Balchan returned to work as planned.  Before the end of the workday, Dr. Balchan received a hand-delivered letter from Dr. Reynolds' office.  This letter directed her to attend a meeting, presumed to be disciplinary in nature.

237.     During the October 7, 2022, meeting, Dr. Reynolds performed a premeditated targeted attack, designed in concert by defendants, against Dr. Balchan and her religious practices, barraging her with a lengthy, intrusive series of scripted questions that violated her sincerely held religious beliefs. This meeting related to and ultimately led to the Section 75 disciplinary charges which would be filed on or about April 11, 2023.

238.     On October 9, 2022, plaintiff engaged in protected activity when she reported discrimination and harassment due to her religion to the defendant Superintendent of Schools and the defendant Board of Education.

239.    As was alleged above, plaintiff repeatedly submitted verbal and written complaints of discrimination, harassment, and retaliation on the basis of her religion to her defendant supervisors, the defendant Superintendent, and the defendant Board.

240.    Defendants deliberately undermined plaintiff's ability to perform her job duties, directed her subordinates to disregard any communication from plaintiff, and promoted Natalie Ali but directed that she continue to perform out-of-title work in order to undermine plaintiff's ability to perform her responsibilities and alter the terms and conditions of Dr. Balchan's employment.

241.    As detailed above, defendants deliberately acted to undermine Dr. Balchan's authority as medical direct. They also directed her subordinates to not share needed information with her. Additionally, defendants promoted Ms. Ali as a reward for working to undermine Dr. Balchan. Following Ms. Ali's promotion, defendants directed her to continue to perform out-of-title duties that were historically within Dr. Balchan's domain. These actions were taken to undermine Dr. Balchan's authority as well as set her up to fail in performing her duties.

On or about March 14, 2023, Dr. Balchan filed a complaint in Westchester County Supreme Court alleging *inter alia* religious discrimination. The next day, March 15, defendants banned Dr. Balchan from the District property, effective immediately without an explanation, and disabled her access to work email was disabled.

242.    In retaliation for engaging in the above-described protected activities, on or about April 11, 2023, the defendant Board voted to suspend plaintiff for thirty days without pay and pursue her termination pursuant to Civil Service Law § 75.

243.    The disciplinary charges brought against Dr. Balchan allege, in words or effect, that she engaged in insubordination and misconduct because, after receiving approval, she utilized her earned accrued personal leave in order to observe the Jewish high holidays.

244.    In retaliation for Dr. Balchan engaging in the above-described protected activities, as well as filing the instant action, on or about April 11, 2023, defendants suspended plaintiff for 30-days without pay without just cause in violation of the applicable collective bargaining agreement.

245.    Following the completion of Dr. Balchan's improper 30-day suspensions, defendants refused to reinstate her to her position. Instead, in retaliation for the above-described protected activities and filing the instant action, defendants placed her back on payroll but at a lower rate of pay than that to which she was entitled.

246.    In retaliation for Dr. Balchan engaging in the above-described protected activates, as well as filing the instant action, on or about September 22, 2023, defendants again removed Dr. Balchan from payroll without due process in violation of the applicable CBA, denying her earned compensation, benefits, and other emoluments of employment.

247.    On or about October 17, 2023, the defendant Board voted to terminate Dr. Balchan, without cause, in violation of the applicable collective bargaining agreement. The basis for her termination was Dr. Balchan's exercise of her sincerely held religious beliefs and in further retaliation for plaintiff's above-described protected activity.

248.    After receiving the disciplinary charges, on or about August 25, 2023, a grievance was filed on behalf of Dr. Balchan, challenging defendants' disciplinary charges seeking termination as lacking just cause.

249.    In retaliation for Dr. Balchan engaging in the above-described protected activities, as well as filing the instant action, on or about September 22, 2023, defendants unlawfully removed plaintiff from payroll without due process in violation of the applicable CBA, denying her pay, earned benefits, and other emoluments of employment.

**COUNT VII**
**VIOLATION NEW YORK HUMAN RIGHTS LAW, EXEC. LAW § 290 ET SEQ.**
**UNLAWFUL DISCRIMINATION AND RETALIATION BASED ON RELIGION**
**AS AGAINST ALL DEFENDANTS**

250.    Plaintiff repeats and realleges every allegation as set forth in paragraphs "1" through "249" as if fully set forth herein.

251.    As a woman of Jewish faith, plaintiff is a member of a protected class.

252.    At all relevant times, plaintiff has been qualified to perform her duties as Medical Director of City School District of New Rochelle.

253.    Defendants subjected plaintiff to pervasive harassment that permeated her workplace and altered the terms and conditions of her employment.

254.    Defendants deliberately undermined plaintiff's ability to perform her job duties, directed her subordinates to disregard any communication from plaintiff, and promoted Natalie Ali but directed that she continue to perform out-of-title work in order to undermine plaintiff's ability to perform her responsibilities and alter the terms and conditions of Dr. Balchan's employment.

255.    As detailed above, defendants deliberately acted to undermine Dr. Balchan's authority as medical direct. They also directed her subordinates to not share needed information with her. Additionally, defendants promoted Ms. Ali as a reward for working to undermine Dr. Balchan. Following Ms. Ali's promotion, defendants directed her to continue to perform out-of-

title duties that were historically within Dr. Balchan's domain. These actions were taken to undermine Dr. Balchan's authority as well as set her up to fail in performing her duties.

256.    On or about March 14, 2023, Dr. Balchan filed a complaint in Westchester County Supreme Court. The next day, March 15, defendants banned Dr. Balchan from the District property, effective immediately without an explanation, and disabled her access to work email was disabled.

257.    On or about April 11, 2023, the defendant Board voted to suspend plaintiff for thirty-days without pay.

258.    On or about April 11, 2023, the defendant Board voted to bring Section 75 disciplinary charges against plaintiff in pursuit of her discharge from employment.

259.    The defendant Board voted to pursue Section 75 charges, the primary basis of which was plaintiff utilizing her contractual personal leave days off to observe the high holy Jewish holidays of Rosh Hashanah and Yom Kippur.

260.    Plaintiff followed all required procedures in requesting permission to utilize her personal accrued leave to observe the Jewish holidays.

261.    Plaintiff received approval from her supervisor to utilize her accrued leave to observe the Jewish holidays.

262.    Plaintiff was entitled to be approved for personal leave pursuant to the applicable collective bargaining agreement.

263.    Notwithstanding plaintiff's compliance with relevant policies and procedures, defendants subjected plaintiff to multiple adverse actions, ultimately seeking plaintiff's termination.

264.    As alleged above, all of the alleged adverse actions are temporally proximate to plaintiff's exercise of her religious beliefs.

265.    As alleged above, inasmuch as defendants seek to terminate plaintiff for her exercise of her religious beliefs, the disciplinary charges brought against plaintiff by defendants were the direct result of plaintiff's exercise of her religious beliefs.

266.    In retaliation for Dr. Balchan engaging in the above-described protected activities, as well as filing the instant action, on or about April 11, 2023, defendants suspended plaintiff for 30-days without pay without just cause in violation of the applicable collective bargaining agreement.

267.    Following the completion of Dr. Balchan's improper 30-day suspensions, defendants refused to reinstate her to her position. Instead, in retaliation for the above-described protected activities and filing the instant action, defendants placed her back on payroll but at a lower rate of pay than that to which she was entitled.

268.    In retaliation for Dr. Balchan engaging in the above-described protected activities, as well as filing the instant action, on or about September 22, 2023, defendants again removed Dr. Balchan from payroll without due process in violation of the applicable CBA, denying her earned compensation, benefits, and other emoluments of employment.

269.    After receiving the disciplinary charges, on or about August 25, 2023, a grievance was filed on behalf of Dr. Balchan, challenging defendants' disciplinary charges seeking termination as lacking just cause.

270.    In retaliation for Dr. Balchan engaging in the above-described protected activities, as well as filing the instant action, on or about September 22, 2023, defendants unlawfully removed

plaintiff from payroll without due process in violation of the applicable CBA, denying her pay, earned benefits, and other emoluments of employment.

271.     On or about October 17, 2023, the defendant Board voted to terminate Dr. Balchan, without cause, in violation of the applicable collective bargaining agreement. The basis for her termination was Dr. Balchan's practice of her sincerely held religious beliefs and in further retaliation for plaintiff's above-described protected activity.

**COUNT VIII**
**VIOLATION OF CIVIL SERVICE LAW § 75-b**
**AS AGAINST THE DISTRICT AND BOARD OF EDUCATION**

272.     Plaintiff repeats and realleges every allegation as set forth in paragraphs "1" through "271" as if fully set forth herein.

273.     On or about April 11, 2023, the defendant Board voted to bring Section 75 disciplinary charges against plaintiff in pursuit of her discharge from employment.

274.     Charge 9 of the Section 75 disciplinary charges alleges that Dr. Balchan engaged in misconduct when she filed a "Complaint of 'Harassment' and/or 'religious discrimination' against the Assistant Superintendent for Human Resources Dr. Corey Reynolds related to the District's review of the basis for and/or the circumstances under which Respondent requested and/or utilized personal days between Thursday, September 22, 2022, through Friday, September 30, 2022."

275.     Charge 9 of the Section 75 disciplinary charges unlawfully retaliates against plaintiff for disclosing improper governmental action.

276.     Charge 10 of the Section 75 disciplinary charges alleges that Dr. Balchan engaged in misconduct when she filed a "Complaint with the New York State Division of Human Rights and the United Stated Equal Employment Opportunity Commission (EEOC) related to the

District's review of the basis for and/or the circumstances under which Respondent requested and/or utilized personal days between Thursday September 22, 2022, through Friday, September 30, 2022.

277.    Charge 10 of the Section 75 disciplinary charges constitutes unlawful retaliation against plaintiff for disclosing improper governmental action.

278.    Charge 11 of the Section 75 disciplinary charges alleges that Dr. Balchan engaged in misconduct when she filed a "Verified Complaint with the New York State Supreme Court, Westchester County, related to the District's review of the basis for and/or the circumstances under which Respondent requested and/or utilized personal days between Thursday September 22, 2022, through Friday, September 30, 2022.

279.    Charge 11.J. alleges:

Paragraph 26 of said Verified Complaint provides in pertinent part:

*On September 28, 2022, during her religious observance, Dr. Balchan responded to Dr. Reynolds because she was offended by his remarks. She wrote, "You should be aware that I am a Jewish woman with a young family. The Jewish New Year, Rosh Hashanah, as well as Yom Kippur on 10/5, represents the holiest days of the year for Jewish people. This is a time of reflection for the year that has passed for setting goals for the year to come. This is very sacred for me, especially during this time of transition.*

Respondent verified, under oath, that a portion of all of said statement was true despite the fact that she knew and/or should have known that a portion or all of said statement was false and/or in accurate and/or erroneous and/or misleading.

280.    Charge 11.K. alleges:

Paragraph 30 of said Verified Complaint provides in pertinent part:

*Dr. Reynolds proceeded with his premeditated targeted attack against Dr. Balchan and her religious practices, barraging her with a lengthy, intrusive series of scripted questions that violated her sincerely held religious beliefs, center to the core of her existence.*

Respondent verified, under oath, that a portion of all of said statement was true despite the fact that she knew and/or should have known that a portion or all of said statement was false and/or in accurate and/or erroneous and/or misleading.

281.    Charge 11 of the Section 75 disciplinary charges constitutes unlawful retaliation against plaintiff for disclosing improper governmental action.

282.    Charge 12 of the Section 75 disciplinary charges alleges that on November 3, 2022, Dr. Balchan engaged in misconduct when she filed a "Complaint of 'harassment' and/or 'retaliation' against her supervisor, Assistant Superintendent for Student Support Services, Dr. Gail Joyner-White related to certain meetings."

283.    Charge 12 of the Section 75 disciplinary charges constitutes unlawful retaliation against plaintiff for disclosing improper governmental action.

284.    Charge 13 of the Section 75 disciplinary charges alleges that Dr. Balchan engaged in misconduct when she filed a "Complaint about another colleague, Natalie Ali, related to an alleged Complaint made by another staff member Sally Moss."

285.    Charge 13 of the Section 75 disciplinary charges details allegations made against Dr. Balchan that she complained that a colleague, Natalie Ali, had been eavesdropping and harassing Dr. Balchan's staff.

286.    Charge 13 of the Section 75 disciplinary charges constitutes unlawful retaliation against plaintiff for disclosing improper governmental action.

287.    Charge 14 of the Section 75 disciplinary charges alleges that Dr. Balchan engaged in misconduct when she made "communications" in which she raised concerns regarding Natalie Ali performing out of title work, and in which she raised concerns regarding her observations that other employees had been permitted to take personal days immediately preceding and/or following holidays but plaintiff was not. Additionally, Charge 14 alleges Dr. Balchan engaged in misconduct

when she asked if Dr. Joyner-White could submit a reinstatement resolution to the defendant Board of Education to reappoint her as permanent District Medical Director, replacing Dr. Corsaro as the interim Medical Director as well as question why Dr. Corsaro's contracted rate doubled since last year.

288.    The "communications" which serve as a basis for Charge 14 of the Section 75 disciplinary charges reflect improper government actions. As a result, Charge 14 of the Section 75 disciplinary charges constitutes unlawful retaliation against plaintiff for disclosing improper governmental action.

289.    Charge 17 of the Section 75 disciplinary charges alleges that Dr. Balchan engaged in misconduct when she communicated directly with the defendant Board of Education regarding allegation that she was being prevented from freely exercising her religion, and that she was being subjected to unlawful discrimination and retaliation.

290.    Charge 17 of the Section 75 disciplinary charges constitutes unlawful retaliation against plaintiff for disclosing improper governmental action.

291.    On or about October 17, 2023, the defendant Board voted to terminate Dr. Balchan, without cause, in violation of the applicable collective bargaining agreement. As explicitly set forth in the disciplinary charges, the basis for plaintiff's termination was her disclosure of improper governmental action to a governmental body.

292.    The disciplinary charges establish a causal connection between the disclosure and the adverse actions levied against plaintiff.

**COUNT IX**
**VIOLATION OF NEW YORK LABOR LAW §§ 201-d(2)(c), 201-d(2)(d), and 215**
**AS AGAINST ALL DEFENDANTS**

293.    Plaintiff repeats and realleges every allegation set forth in paragraphs "1" through "292" as if fully set forth herein.

294.    On or about April 11, 2023, the defendant Board voted to suspend plaintiff for thirty-days without pay.

295.    On or about April 11, 2023, the defendant Board voted to bring Section 75 disciplinary charges against plaintiff in pursuit of her discharge from employment.

296.    The unpaid suspension and Section 75 disciplinary charges brought by defendants against plaintiff were administered because plaintiff made multiple complaints regarding her and her co-workers' terms and conditions of employment.

297.    Charge 13 of the Section 75 disciplinary charges alleges that Dr. Balchan engaged in misconduct when she filed a "Complaint about another colleague, Natalie Ali, related to an alleged Complaint made by another staff member Sally Moss."

298.    Charge 13 of the Section 75 disciplinary charges details allegations made against Dr. Balchan that she complained that a colleague, Natalie Ali, had been eavesdropping and harassing Dr. Balchan's staff.

299.    Charge 13 of the Section 75 disciplinary charges constitutes unlawful retaliation against plaintiff for engaging in protected concerted union-like activity.

300.    Charge 14 of the Section 75 disciplinary charges alleges that Dr. Balchan engaged in misconduct when she made "communications" in which she raised concerns regarding Natalie Ali performing out of title work, and in which she raised concerns regarding her observations that other employees had been permitted to take personal days immediately preceding and/or following holidays but plaintiff was not. Additionally, Charge 14 alleges Dr. Balchan engaged in misconduct when she asked if Dr. Joyner-White could submit a reinstatement resolution to the defendant Board

of Education to reappoint her as permanent District Medical Director, replacing Dr. Corsaro as the interim Medical Director as well as question why Dr. Corsaro's contracted rate doubled since last year.

301.    The "communications" which serve as a basis for Charge 14 of the Section 75 disciplinary charges refer to complaints made by Dr. Balchan regarding the terms and conditions of her and her co-workers' employment. As a result, Charge 14 constitutes unlawful retaliation against plaintiff for engaging in protected concerted union-like activity.

302.    As above alleged, the defendant Board voted to suspend plaintiff for thirty days without pay and pursue Section 75 charges, the primary basis of which was plaintiff utilizing her contractual personal leave days off to observe the high holy Jewish holidays of Rosh Hashanah and Yom Kippur.

303.    Plaintiff's right to utilize her earned contractual benefit, personal leave days, which caused no burden to defendants, was retroactively unapproved by defendants.

304.    Plaintiff's act of taking personal days off from work to take a trip for the purpose of exercising of her religious beliefs constitutes a "legal recreational activity" outside work hours, off of the defendants' premises and without use of the employer's equipment or other property.

305.    As above alleged, defendants subjected plaintiff to multiple adverse actions including, but not limited to, suspending plaintiff for thirty days without pay and terminating her, in retaliation for plaintiff participating in legal recreational activities outside of work hours, off of the defendants' premises and without use of the employer's equipment or other property.

## COUNT X
## PUNITIVE DAMAGES PURSUANT TO 42 U.S.C. § 1983
## AS AGAINST ALL DEFENDANTS

306.    Plaintiff repeats and realleges every allegation set forth in paragraphs "1" through "305" as if fully set forth herein.

307.    Title 42 U.S.C. §1983 provides that monetary damages and a broad range of other relief, including compensatory and punitive damages, are available for violations for an individual's rights.

308.    The aforementioned acts were willful and maliciously perpetrated by the defendant District in order to deprive Dr. Balchan of her Constitutional rights, and discriminate and retaliate against plaintiff.

309.    As detailed above, defendants' conduct is shown to be motivated by improper or evil motive or intent, and/or involved reckless or callous indifference to the federally protected rights of others.

310.    In addition, the District, its Board of Education, or their agents have engaged in the above-described unconstitutional practices with intent, malice, or reckless indifference to plaintiff's federally protected rights.

311.    As such, punitive damages are warranted against the defendants based on their malice and/or reckless indifference as described above in violation of applicable law.

312.    In addition, based on the deliberate, extreme, and outrageous acts of defendants and their agents, plaintiff is entitled to the full range of additional remedies, relief and damages including, but not limited to, compensatory damages for Dr. Balchan's present and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, caused by and resulting from acts and omissions engaged in by defendants.

313.    By their actions and/or omissions, defendants violated plaintiff's rights as set forth in Title 42 U.S. Code §1983, and related laws, rules, and regulations.

## COUNT XI
### *Attorneys' Fees Pursuant to 42 U.S.C. § 1988(b)*

314.    Plaintiff repeats and realleges every allegation set forth in paragraphs "1" through "313" as if fully set forth herein.

315.    Title 42 U.S.C. §1988 provides that monetary damages, in the form of attorneys' fees, are available for violations for an individual's rights in proceedings to enforce 42 U.S.C. § 1983.

316.    By their actions and/or omissions, defendants violated plaintiff's rights as set forth in Title 42 U.S. Code §1983, and related laws, rules, and regulations and, as such, are liable to plaintiff for attorneys' fees.

## JURY DEMAND

317.    Plaintiff demands a trial by jury of all issues in the action.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiff Dr. Brooke Balchan respectfully demands judgment against the defendants as follows:

a.    Declaring that the employment practices complained of in this complaint are unlawful and in violation of applicable Constitutional, federal, state, and/or common law, as described above with regard to plaintiff Dr. Brooke Balchan and other employees similarly situated;

b.    Ordering that plaintiff be forthwith reinstated to employment with defendants, with appropriate tenure status, backpay, seniority, salary increments, bonuses, pension credit, out-of-pocket losses, including medical and insurance expenses, and all other retroactive remuneration

and emoluments of employment to the same extent plaintiff would have received but for defendants' unlawful conduct;

c.      Awarding compensatory damages in an amount to be determined at trial for each count of the complaint for compensatory damages, plaintiff's emotional pain and distress, mental anguish, humiliation, suffering, loss of enjoyment of life, inconvenience, physical harm and injuries, present and/or future pecuniary losses, and other non-pecuniary losses;

e.      Awarding punitive damages in the sum to be determined at trial for each count of the complaint;

f.      Permanently enjoining the defendants and their agents, officers, and/or employees from engaging in any of the practices found by this Court to be in violation of the laws, statutes, or Constitutional provisions cited herein;

g.      Enjoining the defendants and their agents, officers, and/or employees from otherwise harassing, discriminating, and/or retaliating against the plaintiff;

h.      Awarding reasonable attorneys' fees as permitted by law;

i.      Awarding expert fees, if any, as well as the costs and expenses of the prosecution of this action;

j.      Awarding pre-judgment and post-judgment interest at the statutory rate until time of payment;

k.      Directing that the Court retain jurisdiction over this action to ensure full compliance with the Court's Orders and requiring defendants to file such reports as the Court deems necessary to evaluate such compliance; and

l.      Together with such other and further relief as the Court deems just and equitable.

Dated: Melville, New York
      October 25, 2023

                                    Respectfully submitted,

                                    GILBERT LAW GROUP

By:     _____

                                    JASON ANDREW GILBERT
                                    HOWARD E. GILBERT
                                    Attorneys for Plaintiff Dr. Brooke Balchan
                                    425 Broadhollow Road, Suite 405
                                    Melville, New York 11747-4701
                                    (631) 630-0100

**VERIFICATION**

STATE OF NEW YORK     }
                                       }ss.:
COUNTY OF WESTCHESTER     }


    I, DR. BROOKE BALCHAN, being duly sworn, depose and say that deponent is the plaintiff within the within action; I have read the foregoing complaint, and know the contents thereof; that the same are true to my knowledge, except as to the matters therein stated to alleged upon information and belief, and to those matters, I believe them to be true.


_____
DR. BROOKE BALCHAN


Sworn to before me on the
____ day of October 2023


_____
Notary Public

ALEXANDER GILBERT
STATE OF NEW YORK
NOTARY PUBLIC
Qualified in Suffolk County
02GI6407471
MY COMMISSION EXPIRES 06/08/20__