UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BROOKE BALCHAN,

              Plaintiff,

       -against-

NEW ROCHELLE CITY SCHOOL DISCTRICT, THE BOARD OF EDUCATION OF NEW ROCHELLE CITY SCHOOL DISTRICT, COREY REYNOLDS, GAIL JOYNER, TRACI JACKSON, JONATHAN RAYMOND, NATALIE ALI, Individually, and as Aiders and Abettors,

              Defendants.

**OPINION AND ORDER**

23-CV-06202 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

    Dr. Brooke Balchan ("Plaintiff") brings this action against New Rochelle City School District (the "District"), the Board of Education of New Rochelle City School District (the "Board"), Dr. Corey Reynolds ("Dr. Reynolds"), Dr. Gail Joyner ("Dr. Joyner"), Traci Jackson, Jonathan Raymond, and Natalie Ali (collectively, "Defendants"). Plaintiff filed her initial Complaint on July 19, 2023. (Doc. 5). On October 26, 2023, with the Court's leave, Plaintiff filed her First Amended Complaint, alleging that Defendants discriminated and retaliated against her on the basis of religion, in violation of the Fourteenth Amendment under 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 *et seq*. ("Title VII"), and the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq*. ("NYSHRL"). (Doc. 27, "FAC"). Plaintiff also alleges violations of New York Civil Service Law and New York Labor Law ("NYLL"). (*Id*.).

    Defendants served on December 13, 2023, pursuant to the briefing schedule set forth by the Court, their motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. 34; Doc. 35, "Epstein Decl."; Doc. 36, "Def. Br."). Plaintiff served her opposition on January 29, 2024.

(Doc. 37, "Gilbert Affirmation"; Doc. 38, "Pl. Br."), and the motion was briefed fully with the filing of Defendants' reply (Doc. 39, "Reply") and all motion papers on February 16, 2024.

For the reasons set forth below, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

## **BACKGROUND**

The following facts are taken from the First Amended Complaint.

Plaintiff, an Ashkenazi Jewish woman, was employed as a Medical Director for the District for approximately six years starting in July 2017. (FAC ¶¶ 18, 37-38). Plaintiff observes Jewish holidays including, but not limited to, Yamim Nora'im (a/k/a the "Days of Awe"), Rosh Hashanah, and Yom Kippur. (*Id*. ¶ 44). The Days of Awe run in the ten-day period between Rosh Hashanah and Yom Kippur and are a time when "Jews meditate on the subject of the holidays and ask for forgiveness from anyone they have wronged." (*Id*. ¶ 47). Plaintiff alleges that her personal scheme of things religious evolved over the course of her life, and that marriage to her Trinidadian husband resulted in her "meld[ing] many of her Jewish religious beliefs into her new Trinidadian identity." (*Id*. ¶¶ 49-51).

In June 2022, the District brought Plaintiff up on Civil Service Law § 75 disciplinary charges which allegedly caused her extreme emotional distress. (*Id*. ¶ 69). Plaintiff believed she needed to go on a religious retreat during the Days of Awe to mediate, consider changing careers, and address the trauma. (*Id*. ¶¶ 69-70, 74). Specifically, Plaintiff's "personal scheme of things religious required that she take personal leave during [the Days of Awe] to adjust, meditate, repair her connection to [God], and re-focus . . . ." (*Id*. ¶ 75). Accordingly, she planned a trip with her family to Trinidad and Tobago which she alleges was "religious in nature given its relation to the

Jewish high holy days" and what had been going on in her personal and professional life. (*Id.* ¶¶ 70, 73, 76).

On September 12, 2022, Plaintiff was informed that she was no longer suspended from work. (*Id.* ¶ 29). Plaintiff, who had six personal leave days available to her at the time, requested five days off (September 22, 23, 28, 29, and 30 of 2022) via the electronic AESOP management system. (*Id.* ¶ 77). She specified that the days were being taken for "religious observance" during "pre-planned travel abroad." (*Id.*). At a meeting on September 19, 2022, Dr. Reynolds, Assistant Superintendent for Human Resources, allegedly stated that the personal leave "won't be a problem." (*Id.* ¶ 79). On September 21, 2022, the evening prior to Plaintiff's travel, Dr. Reynolds emailed Plaintiff saying that "to the extent that you wish to use these days for purposes of a vacation, your request is denied." (*Id.* ¶ 80). Plaintiff responded to the email on September 28, stating that:

> I did not request 'personal days' to take vacation. Making assumptions about how I intend to use these days is uncalled for. You should be aware that I am a Jewish woman with a young family. The Jewish New Year, Rosh Hashanah, as well as Yom Kippur on 10/5, represents the holiest days of the year for Jewish people. This is a time of reflection for the year that has passed and for setting goals for the year to come. This time is very sacred for me, especially during this time of transition. Additionally, I have personal business to tend to over the days I requested. I do not deserve to be discriminated against for my religion or my need to plan for my family.

(*Id.* ¶ 81).

Plaintiff returned to work on October 3, 2022. (*Id.* ¶ 83). On October 7, 2022, a meeting was held with Plaintiff, her union representative, Dr. Reynolds, and others, regarding her recent leave request. (*Id.* ¶ 84). Plaintiff alleges that she explained the religious importance of her personal leave request, endured a "barrage of discrimination and harassment," and felt

"intimidated" and "threatened" at the meeting. (*Id*. ¶¶ 84-85). On October 9, 2022, Plaintiff emailed Superintendent Raymond and the Board to file a complaint against Dr. Reynolds for religious discrimination and retaliation. (*Id*. ¶ 89). Plaintiff also filed a complaint with the New York State Division of Human Rights ("DHR") and the Equal Employment Opportunity Commission ("EEOC") based on religious discrimination. (*Id*. ¶ 90). On October 11, 2022, Plaintiff was informed that her previously approved personal leave request was retroactively "unapproved." (*Id*. ¶ 91). Thereafter, Dr. Joyner, Assistant Superintendent of Student Support Services, "intentionally interfered with [Plaintiff's] ability to connect with her subordinate staff." (*Id*. ¶¶ 79, 94). Plaintiff complained again to the Superintendent and the Board that the discrimination and harassment was "interfering with her ability to effectively perform the duties of her position." (*Id*. ¶ 95). In a letter dated March 7, 2023, Edward McCarthy, the attorney who Defendants hired to investigate Plaintiff's claims of retaliation and discrimination, found no fault by either Dr. Reynolds or Dr. Joyner. (*Id*. ¶¶ 93, 104, 106).

Plaintiff filed a complaint in the Supreme Court for the State of New York, Westchester County on March 14, 2023. (*Id*. ¶ 107). The next day, she was removed from her current duties and banned from District property, effective immediately. (*Id*. ¶ 108). On or about April 11, 2023, the Board voted to suspend Plaintiff without pay for thirty days pending a disciplinary hearing to bring Section 75 charges—the primary basis of which was Plaintiff's use of her personal leave days. (*Id*. ¶¶ 111, 145). Plaintiff was not present at and did not participate in any Section 75 hearing. (*Id*. ¶¶ 159-162). Kenneth Bernstein, Esq. (the "Hearing Officer") presided over the

Section 75 hearing and entered his Report and Recommendation (the "Report")[1] into the record at

an October 17, 2023 Board meeting. (*Id*. ¶¶ 158, 167). The Board voted to accept the Report in its

entirety and terminated Plaintiff. (*Id*. ¶¶ 157, 165). Plaintiff alleges that the Report contained false

and spurious misrepresentations and aspersions, and that it was placed in her personnel file and

will be disclosed to potential future employers. (*Id*. ¶¶ 167-168).

This litigation followed.[2]

## STANDARD OF REVIEW

I.     Federal Rule of Civil Procedure 12(b)(6)

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim

upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)).[3] A claim is plausible on its face "when the ple[d] factual

content allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin

to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted

---

[1] Defendants contend, and Plaintiff disputes, that the factual findings in the Report should be given preclusive effect on this motion under the doctrine of collateral estoppel. (Def. Br. at 16-21; Pl. Br. at 9-18). The Court need not decide the issue because, as discussed *infra*, the Hearing Officer's factual findings will not impact the Court's decision on the merits. *See Garcia v. Yonkers Bd. of Educ.*, 188 F. Supp. 3d 353, 356 (S.D.N.Y. 2016).

[2] Plaintiff also has an earlier-filed action pending before this Court which is based on related factual allegations—*Balchan v. City Sch. Dist. of New Rochelle*, No. 21-CV-04798.

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

unlawfully." *Id*. The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## II.     Documents Considered

On a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *see also Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which plaintiff relied in bringing the suit.").

Even if a document is not incorporated by reference into the complaint, the Court may still consider such document "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d

104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.2d 391, 398 (2d Cir. 2006));

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also*, *Perry v. Mary*

*Ann Liebert, Inc.*, No. 17-CV-5600, 2018 WL 2561029, at *4 (S.D.N.Y. June 4, 2018), *aff'd*, 765

F. App'x 470 (2d Cir. 2019). "A plaintiff's reliance on the terms and effect of a document in

drafting the complaint is a necessary prerequisite to the court's consideration of the document on

a dismissal motion; mere notice or possession is not enough." *Chambers v. Time Warner, Inc.*, 282

F.3d 147, 153 (2d Cir. 2002) (emphasis in original).

Where a document is not attached to the complaint or integral thereto such that it can be

considered on a motion to dismiss, a district court must either "exclude the additional material and

decide the motion on the complaint alone" or "convert the motion to one for summary judgment

under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material."

*Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (quoting *Fonte v. Board of Managers*

*of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1988)); *see also* Fed. R. Civ. P.

12(d).

The documents proffered by Defendants on this motion, introduced by an attorney

declaration, include, *inter alia*, Section 75 hearing officer reports, written correspondence between

the parties, Plaintiff's Collective Bargaining Agreement, an audio recording of a meeting between

the parties, an agenda and resolution by the Board, and Plaintiff's employment attendance records.

(Epstein Decl., Exs. B, D, E, F, G, H, L, O, Q). Defendants argue that these documents are properly

considered on a motion to dismiss and, even if not, that conversion to a motion for summary

judgment is appropriate here. (Reply at 8-9). Plaintiff argues that the extraneous documents

submitted by Defendants should not be considered because they are not integral to the First

Amended Complaint and are hearsay and/or irrelevant evidence. (Pl. Br. at 18-20). Plaintiff further

argues that there is no basis on which to convert this motion to dismiss to one for summary judgment. (*Id*. at 20-22).

This Court has "complete discretion in determining whether to convert" motions to dismiss into motions for summary judgment. *Abbey v. 3F Therapeutics, Inc.*, No. 06-CV-00409, 2009 WL 4333819, at *5 (S.D.N.Y. Dec. 2, 2009). At this stage of the proceedings, the Court declines to do so here. Many of the documents are hearsay; and not properly authenticated. The cornerstone of a proper summary judgment analysis is that it be based upon admissible evidence. The moving attorney's declaration which refers to these documents does nothing to eliminate those infirmities as he lacks the personal knowledge to do so. Moreover, to the extent Defendants submit several extraneous documents for consideration in connection with their motion, Defendants cite to only a few of those documents in their substantive analysis. (Epstein Decl., Exs. B, Q, H, N). Accordingly, the Court declines to consider the extraneous documents offered by Defendants except for those specifically addressed *infra*. The Court also declines to consider the arbitration decision attached to Plaintiff's opposition as Exhibit 2 to the Gilbert Affirmation, given that Defendants do not argue it should be given preclusive effect. (Reply at 7).

## ANALYSIS

Plaintiff presses eleven claims for relief in the First Amended Complaint: (i) a § 1983 claim concerning denial of her right to free exercise of religion in violation of the Fourteenth Amendment; (ii) a § 1983 claim for stigma-plus in violation of the Fourteenth Amendment; (iii) discrimination on the basis of religion in violation of Title VII; (iv) retaliation in violation of Title VII; (v) a § 1983 claim for violation of the Equal Protection Clause; (vi) a § 1983 claim for retaliation in violation of the Equal Protection Clause; (vii) discrimination and retaliation on the basis of religion in violation of NYSHRL; (viii) retaliation in violation of Civil Service Law § 75-

b (against District and Board only); (ix) violation of NYLL §§ 201-d(2)(c), 201-d(2)(d), and 215; (x) punitive damages pursuant to § 1983; and (xi) attorneys' fees pursuant to § 1988(b). (*See generally* FAC).

      I.    <u>Religious Discrimination: First, Third, Fifth, and Seventh Claims for Relief</u>

Plaintiffs' religious discrimination claims are predicated on Defendants allegedly terminating her for her utilizing contractual personal leave days for religious observance of Jewish holidays. (FAC ¶¶ 145-146).

As a threshold matter, Plaintiff contends that Defendants' briefing only makes arguments as to her discrimination claims brought pursuant to Title VII and/or NYSHRL and fails to address her Constitutional claims. (Pl. Br. at 22). Defendants ask the Court to dismiss the First Amended Complaint in its entirety (Def. Br. at 29-30), but do not specifically address the discrimination allegations brought pursuant to the Free Exercise Clause (First Claim for Relief) or the Equal Protection Clause[4] (Fifth Claim for Relief). "[I]t is not this Court's responsibility to raise and make counsel's arguments for them." *Moore v. Peters*, 92 F. Supp. 3d 109, 126 (W.D.N.Y. 2015). Accordingly, the Court need only analyze the discrimination claims brought pursuant to Title VII (Third Claim for Relief) and the NYSHRL (Seventh Claim for Relief). The motion as to the First and Fifth Claims for Relief is denied.

---

[4] The Court, in any event, notes that while neither party conducted a substantive analysis of the Fifth Claim for Relief for violation of the Equal Protection Clause, Defendants briefly addressed Plaintiff's theory of disparate treatment which underlies this claim. (Reply at 11-12). The First Amended Complaint alleges that similarly situated non-Jewish employees were not disciplined for utilizing personal leave days immediately prior to or following a holiday, and that the terms of the Collective Bargaining Agreement were disparately applied to Plaintiff. (FAC ¶¶ 215-228). The Court finds that Plaintiff has sufficiently alleged disparate treatment by Defendants to survive the motion to dismiss.

A. <u>Title VII – Third Claim for Relief</u>

Title VII makes it unlawful for employers to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e–2(a)(1)). A plaintiff, to state a *prima facie* case of religious discrimination under Title VII, must plausibly allege that "(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement." *Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006) (quoting *Knight v. Conn. Dep't of Pub. Health,* 275 F.3d 156, 167 (2d Cir. 2001)).

First, Defendants argue that Plaintiff failed to allege she had a sincerely held religious belief requiring her to travel to Trinidad and Tobago or that such a requirement conflicted with her work obligations. (Def. Br. at 22-23). Plaintiff argues that she pled a sincere religious belief— namely, that she was required to take leave and meditate following her initial Section 75 hearing and during the Days of Awe—and that the sincerity of her belief is improper for resolution at the motion to dismiss stage. (Pl. Br. at 23-25).

"Title VII defines religion capaciously to include 'all aspects of religious observance and practice, as well as belief.'" *Gardner-Alfred v. Fed. Rsrv. Bank of New York*, 651 F. Supp. 3d 695, 720 (S.D.N.Y. 2023) (citing 42 U.S.C. § 2000e(j)). "The inquiry as to whether a person's belief is religious is twofold: 'whether the beliefs professed by a [claimant] are sincerely held and whether they are, in his own scheme of things, religious.'" *Id.* (citing *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984)). "[C]ourts have a limited function in determining whether religious beliefs are

protected." *Id.* (citing *Friedman v. Clarkstown Cent. Sch. Dist.*, 75 F. App'x 815, 818 (2d Cir. 2003)).

Here, the First Amended Complaint alleges that Plaintiff, an Ashkenazi Jewish woman, observes the Days of Awe, "during which time Jews meditate on the subject of the holidays . . .," and that her marriage resulted in her "meld[ing] many of her Jewish religious beliefs into her new Trinidadian identity." (FAC ¶¶ 37-44, 47, 51). Therefore, because Plaintiff's "personal scheme of things religious required that she take personal leave during [the Days of Awe] to adjust, meditate, repair her connection to [God], and re-focus," she planned a family trip to Trinidad and Tobago that had "significant spiritual and religious significance." (*Id.* ¶¶ 75-76, 78). Accepting these allegations as true and drawing all inferences in Plaintiff's favor, as the Court must at this stage, Plaintiff has plausibly pled that she held a sincere religious belief requiring her to take leave during the Days of Awe. *See Gardner-Alfred*, 651 F. Supp. 3d at 721 ("The first requirement (i.e., sincerity of a person's religious belief) is a question of fact—unsuitable to resolution at the motion to dismiss stage."). Moreover, Plaintiff's taking leave to travel to her religious retreat in Trinidad and Tobago necessarily conflicted with her requirement to be present at work.[5]

Defendants further argue that *factual* findings in the Report are entitled to preclusive effect in this action and demonstrate that Plaintiff's trip was not religious in nature. (Def. Br. at 24; Reply at 11). Plaintiff argues that the factual findings are not probative and not entitled to preclusive effect because, *inter alia*, she did not have the opportunity to fully litigate the issues at the Section

---

[5] Defendants point out that Plaintiff's personal leave started three or four days prior to the start of the Days of Awe, and that she returned to work prior to Yom Kippur. (Def. Br. at 23-24; Reply at 9). Plaintiff responds that this is because her travel plan was subject to accommodating the other Jewish high holidays and available flight schedules. (Pl. Br. at 25). This factual issue is not suitable for resolution at the motion to dismiss stage.

75 hearing. (Pl. Br. at 10-18). However, even assuming *arguendo* that the factual findings that

Defendants rely on are entitled to preclusive effect, the Court's conclusion would not change. For

instance, Defendants cite to the Hearing Officer's findings about what activities Plaintiff did on

her trip (i.e. kayaking, horseback riding, drinking alcoholic beverages, etc.). (Def. Br. at 24;

Epstein Decl. Ex. B at 24-25).[6] Plaintiff does not specifically address these findings nor argue facts

to the contrary. (Pl. Br. at 24-25). *See Garcia v. Yonkers Bd. of Educ.*, No. 15-CV-00767, 2018

WL 4007648, at *5 (S.D.N.Y. Aug. 21, 2018) ("The Court may give preclusive effect to the

Hearing Officer's factual findings only 'insofar as such findings preclude Plaintiff from arguing

facts to the contrary.'"), *aff'd*, 803 F. App'x 441 (2d Cir. 2020). Rather, Plaintiff maintains that

she was required to take leave to reflect and meditate and that the issue of whether she lied

regarding the nature of her leave is a question of fact. (*Id.*). Here, the fact that Plaintiff spent time

on these non-religious activities during her trip does not necessarily foreclose the possibility that

she spent time meditating for religious purposes. Accordingly, accepting these findings as true

does not warrant dismissal of Plaintiff's discrimination claims.[7]

Defendants also cite to the Hearing Officer's finding that "Plaintiff did not engage in any

religious observance or obligation during her trip to Tobago." (Def. Br. at 24). The Court will not

dispose of Plaintiff's discrimination claims based on this broad factual conclusion, especially given

---

[6] A copy of the Report is submitted with Defendants' motion as Exhibit B to the Epstein Declaration. The Court can and does consider the Report because it is referenced in and integral to the First Amended Complaint. (*see* FAC ¶¶ 158, 163-168). *See Heckman*, 568 F. App'x 41, 43; *Manley*, 2011 WL 2947008, at *1 n.1. The Court may also take judicial notice of the Report to establish the existence of the opinion, but not for the truth of the facts asserted therein. *Gunn v. Annucci*, No. 20-CV-02004, 2021 WL 1699949, at *3 (S.D.N.Y. Apr. 29, 2021); *see also Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 277 (S.D.N.Y. 2002) (taking judicial notice of a hearing officer's report that resulted from a Section 75 hearing).

[7] To the extent the Court could consider them, the Hearing Officer's findings would certainly reduce the likelihood that Plaintiff traveled to Trinidad and Tobago because of a sincere religious belief. These factual issues may be addressed at a later stage.

that the alleged method of religious observance was in the form of meditation and reflection. (FAC ¶¶ 47, 233). Nor will the Court give preclusive effect to the Hearing Officer's findings about the truth or falsity of Plaintiff's allegations. (Def. Br. at 24 (*see e.g.* "H.O. Bernstein made a factual finding that Plaintiff's allegation that she traveled to Tobago for religious purposes was false")). Those findings represent the Hearing Officer's ultimate conclusions based on facts gathered during the hearing and are not properly categorized as "factual" findings. The issue before the Hearing Officer was different than the issues before this Court.

With respect to the disclosure element, Plaintiff's initial leave request specified that leave was being taken for "religious observance" during "pre-planned travel abroad." (*Id*. ¶¶ 77, 80). When questioned about the nature of her trip, Plaintiff identified the Jewish high holidays of Rosh Hashanah and Yom Kippur and stated that it was a "sacred" time for her. (*Id*. ¶ 81). Plaintiff also allegedly "provided the explicit rationale for the religious importance of her personal leave request" at the October 7, 2022 meeting. (*Id*. ¶ 84). Defendants rely on an audio recording of the October 7 meeting and a transcript of that recording to argue that Plaintiff did not provide any rationale for her travel requirement. (Def. Br. at 25; Epstein Decl. Exs. H, H-1). The Court declines to consider the audio recording or transcript on this motion as they are mostly inadmissible hearsay. Therefore, Plaintiff has plausibly alleged that she disclosed her religious belief to Defendants.

Finally, Plaintiff has clearly alleged that she was disciplined for exercising her religious beliefs. Specifically, Plaintiff alleges that the Board terminated her for utilizing her contractual personal leave days to observe the high holy Jewish holidays of the Days of Awe, Rosh Hashanah, and Yom Kippur. (*Id*. ¶¶ 145, 176). Accordingly, at this stage, Plaintiff has plausibly pled religious discrimination pursuant to Title VII.

B.  NYSHRL – Seventh Claim for Relief

Claims of discrimination under the NYSHRL and Title VII are generally treated as "analytically identical." *See Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 323 (S.D.N.Y. 2020) (citing *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 n. 7 (2d Cir. 2019)). However, because the subject conduct occurred after October 11, 2019, the amended, more liberal standard of the NYSHRL applies to Plaintiff's discrimination claim. *See Timothy J. Lehey, v. Northwell Health, Inc., & North Shore LIJ Anesthesiology, P.C.*, No. 23-CV-04708, 2024 WL 1703697, at *3 (S.D.N.Y. Apr. 19, 2024). Given the Court's finding here that Plaintiff plausibly pled a discrimination claim in violation of Title VII, Plaintiff has plausibly pled a claim under the more liberal standard of the NYSHRL.

Accordingly, Defendants' motion to dismiss the Third and Seventh (to the extent it is based on discrimination) Claims for Relief is denied.

II.  Retaliation: Fourth, Sixth, and Seventh Claims for Relief

Plaintiff advances retaliation claims under Title VII, the NYSHRL, and § 1983, on the basis that she was unlawfully terminated in retaliation for submitting complaints of religious discrimination. Neither party addresses the retaliation standard under § 1983 (Sixth Claim for Relief) in their briefing, so the Court's analysis herein pertains only to Title VII and the NYSHRL. To the extent the motion seeks to dismiss the Sixth Claim for Relief, it is denied.

A.  Title VII – Fourth Claim for Relief

To make out a *prima facie* case of retaliation, "a plaintiff must demonstrate that (1) she engaged in protected activity, (2) the defendant was aware of that activity, (3) she was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or

actions." *Carr v. New York City Transit Auth.*, 76 F.4th 172, 180 (2d Cir. 2023); *see also Ninying v. New York City Fire Dep't*, 807 F. App'x 112, 115 (2d Cir. 2020).

Plaintiff alleges that she made multiple complaints of discrimination, retaliation, and harassment. (Pl. Br. at 29; FAC ¶¶ 181-187). "It is well-established that, while a plaintiff's complaint does not have to be correct in order to constitute protected activity, it must have been made in the 'good faith, reasonable belief' that it was." *Polite v. VIP Cmty. Servs.*, No. 20-CV-07631, 2022 WL 9847075, at *2 (S.D.N.Y. Oct. 17, 2022). Defendants argue that these complaints do not constitute protected activities because they were not made with a good faith belief that she was complaining about discrimination. (Def. Br. at 26). Defendants' argument relies on the Hearing Officer's finding that Plaintiff was dishonest and acting in bad faith when she complained of religious discrimination. (Reply at 12; Epstein Decl. Ex. B at 24-25). But this finding, which Defendants offer as a factual finding, is more appropriately construed as a legal conclusion stemming from the Hearing Officer's analysis of factual findings. The Court therefore declines to give preclusive effect to that finding. Since the Court cannot determine at this stage that Plaintiff's complaints were not made in good faith, Plaintiff has sufficiently alleged that she engaged in protected activity.

Defendants next argue that Plaintiff cannot overcome their legitimate, non-retaliatory reason for terminating her—namely, the "staggering pattern of deceitful activity" that Plaintiff engaged in upon returning to work. (Def. Br. at 27). However, even taking the Hearing Officer's findings as true that Plaintiff engaged in misconduct following her return to work, "[t]ermination for cause does not preclude the possibility of termination motivated by unlawful animus." *Garcia*, 188 F. Supp. 3d at 363 (citing *Leon v. New York City Dep't of Educ.*, 612 Fed. Appx. 632, 635 (2d Cir. 2015)). Plaintiff has plausibly alleged that she was removed from her duties within a day of

filing her discrimination complaint in state court. (FAC ¶ 186). Considering the close temporal proximity between her complaints and termination, as well as Plaintiff's alleged disparate treatment, she has sufficiently stated a claim for retaliation at this early stage. *See Persaud v. City of New York*, No. 22-CV-02919, 2023 WL 2664078, at *4 (S.D.N.Y. Mar. 28, 2023).

        B.  NYSHRL – Seventh Claim for Relief

Prior to the 2019 amendments to the NYSHRL, retaliation claims under Title VII and the NYSHRL were governed under the same standards. *See Eur. v. Equinox Holdings, Inc.*, No. 20-CV-07787, 2022 WL 4124763, at *9 (S.D.N.Y. Sept. 9, 2022). Given the Court's conclusion that Plaintiff has plausibly alleged retaliation in violation of Title VII, the Court finds Plaintiff has plausibly alleged retaliation under the more liberal NYSHRL standard.

Accordingly, Defendants' motion is denied as to the Fourth, Sixth, and Seventh (to the extent it is based on retaliation) Claims for Relief.

    III.    Second Claim for Relief: Stigma Plus Claim

Plaintiff's Second Claim for Relief, brought pursuant to 42 U.S.C. §§ 1983, advances a "stigma plus" claim which asserts a violation of her Fourteenth Amendment due process rights. (FAC ¶¶ 148-168).

A plaintiff can state a "stigma-plus" claim by alleging that she "has suffered a loss of reputation 'coupled with the deprivation of a more tangible interest, such as government employment.'" *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006) (quoting *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004)). Such a claim is referred to as a "stigma-plus" claim because "it involves an 'injury to one's reputation (the stigma) coupled with the deprivation of some tangible interest or property right (the plus), without adequate process.'" *Id.* (quoting *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003)). To state a stigma-plus claim, a plaintiff

must allege that (1) "the government made stigmatizing statements about [her]"; (2) "these stigmatizing statements were made public"; and (3) "the stigmatizing statements were made concurrently with, or in close temporal relationship to, the plaintiff's dismissal from government employment." *Segal*, 459 F.3d at 212.

First, Defendants argue that the testimony presented to the Hearing Officer is privileged and cannot form the basis of a stigma plus claim. (Def. Br. at 29). Plaintiff does not respond to the privilege argument in opposition but clarifies that her claim is premised on the entire Report, not just witness testimony. (Pl. Br. at 31). The issue, therefore, is whether the Report was "stigmatizing." "Statements that 'denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession' will satisfy the stigma requirement." *Spang v. Katonah-Lewisboro Union Free Sch. Dist.*, 626 F. Supp. 2d 389, 395 (S.D.N.Y. 2009). "[A] plaintiff is generally required to raise the falsity of these stigmatizing statements only as an issue, not prove they are false." *Id*. (citing *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004)).

Here, the First Amended Complaint alleges that the Report "included dozens of manufactured, spurious, defamatory and dehumanizing aspersions regarding [Plaintiff], her ethics, morals, professionalism, and integrity," as well as false findings and disciplinary charges. (FAC ¶¶ 158-163, 167). Therefore, Plaintiff has plausibly alleged that the Report contained stigmatizing statements in connection with her termination and has sufficiently raised the falsity of those

statements. [8] Moreover, Plaintiff plausibly alleges that Defendants made these stigmatizing statements public by placing the Report in her personnel file. (*Id*. ¶ 167). *See Huda v. New York City Health & Hosps. Corp.*, No. 19-CV-11556, 2021 WL 1163975, at *4 (S.D.N.Y. Mar. 26, 2021) ("Placing stigmatizing charges in a '*discharged* employee's personnel file' may qualify as public dissemination because those statements 'are likely to be disclosed to prospective employers.'") (emphasis in original) (citing *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 631 (2d Cir. 1996)).

Accordingly, Defendants' motion is denied as to the Second Claim for Relief.

IV.     Eighth Claim for Relief: New York Civil Service Law Claim Section 75–b

Plaintiff's Eighth Claim for Relief alleges that the District and Board retaliated against her in violation of Civil Service Law § 75–b. (FAC ¶¶ 231-249). The parties dispute whether Plaintiff is statutorily excluded from bringing a claim for damages under Civil Service Law § 75-b. (Reply a 12; Pl. Br. at 30). The statute provides, in relevant part, as follows:

> 2(a) A public employer shall not dismiss or take other disciplinary or other adverse personnel action against a public employee regarding the employee's employment because the employee discloses to a governmental body information . . . which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action.
>
> 3(a) Where an employee is subject to dismissal or other disciplinary action under a final and binding arbitration provision, or other disciplinary procedure contained in a collectively negotiated agreement, or under section seventy-five of this title . . . and the employee reasonably believes dismissal or other disciplinary action would not have been taken but for the conduct protected under subdivision two of this section, he or she may assert such as a defense before the designated arbitrator or hearing officer . . . If there

---

[8] Defendants argue that Plaintiff is estopped from challenging the Hearing Officer's factual findings. (Reply at 13). But Plaintiff is not estopped from challenging the entire Report which contains allegedly false findings and charges that are not purely factual in nature.

is a finding that the dismissal or other disciplinary action is based
solely on a violation by the employer of such subdivision, the
arbitrator or hearing officer shall dismiss or recommend dismissal
of the disciplinary proceeding, as appropriate, and, if appropriate,
reinstate the employee with back pay, and, in the case of an
arbitration procedure, may take other appropriate action as is
permitted in the collectively negotiated agreement.

3(c) Where an employee is not subject to any of the provisions of
paragraph (a) or (b) of this subdivision, the employee may
commence an action in a court of competent jurisdiction under the
same terms and conditions as set forth in article twenty-C of the
labor law.

N.Y. Civ. Serv. Law § 75-b(2), (3)(a) and (c).

"The statute makes clear that an employee facing retaliation 'may commence an action in
a court of competent jurisdiction' only when that employee 'is not subject to any of the provisions
of paragraph (a) . . . of this subdivision.'" *Dibiase v. Barber*, No. 06-CV-05355, 2008 WL
4455601, at *9 (E.D.N.Y. Sept. 30, 2008) (citing N.Y. Civ. Serv. Law § 75-b(3)(c)). Here, Plaintiff
was terminated following a Section 75 hearing (FAC ¶¶ 24-28, 165) and is therefore covered under
§ 75-b(3)(a) of the statute. Accordingly, Plaintiff's claim under § 75-b fails as a matter of law
because the statute permits her to raise retaliation only as a defense to disciplinary charges and not
as a separate claim for damages. *See Perfetto v. Erie Cnty. Water Auth.*, No. 03-CV-0439E(F),
2006 WL 1888556, at *5 (W.D.N.Y. July 7, 2006).

Accordingly, Defendants' motion to dismiss the Eighth Claim for Relief is granted.

V.      Ninth Claim for Relief: Violation of New York Labor Law §§ 201-d(2)(c), 201-d(2)(d), and 215

Plaintiff's Ninth Claim for Relief alleges that Defendants violated NYLL §§ 201-d(2)(c), 201-d(2)(d), and 215 in connection with her suspension and termination for utilization of personal leave days. (FAC ¶¶ 293-305).

NYLL §§ 201-d(2)(c) and (2)(d) prohibit employers from terminating any employee because of "legal recreational activities . . . outside of work hours" or "membership in a union or any exercise of rights granted under Title 29, USCA, Chapter 7 or under article fourteen of the civil service law." NYLL § 201-d(2)(c) and (2)(d). With respect to NYLL § 201-d(2)(c), the parties dispute whether Plaintiff's taking personal leave constituted a "legal recreational activity outside of work hours." (Def. Br. at 29; Pl. Br. at 32). The premise of the First Amended Complaint is not that Plaintiff was disciplined for her conduct outside of work, but rather that she was disciplined for being absent from work without personal leave approval. (FAC ¶ 304). Accordingly, Plaintiff has not alleged that she was terminated because of her activity outside of works hours and her claim under § 201-d(2)(c) fails.

With respect to NYLL § 201-d(2)(d), the parties dispute whether Plaintiff has alleged that she was engaged in union activities. (Pl. Br. at 32-33; Reply at 14). The First Amended Complaint alleges that Defendants inhibited Plaintiff's ability to communicate with her colleagues and

refused to permit her to have union representation at the March 15, 2023 meeting. (Pl. Br. at 32; FAC ¶ 108). Therefore, Plaintiff has sufficiently pled a violation of § 201-d(2)(d) at this stage.

Finally, Plaintiff correctly points out that Defendants do not address in their briefing her claims under NYLL § 215. (Pl. Br. at 32). Thus, the motion is denied as to that claim.

Accordingly, Defendants' motion is granted as to the Ninth Claim for Relief only to the extent that it is based on NYLL § 201-d(2)(c). Defendants' motion is otherwise denied as to the Ninth Claim for Relief.

## VI.   Damages: Tenth and Eleventh Claims for Relief

Plaintiff's Tenth Claim for Relief seeks punitive damages pursuant to § 1983 and her Eleventh Claim for Relief seeks attorney's fees pursuant to § 1988(b). (FAC ¶¶ 306-316). Neither party addresses these claims for relief in their briefing. Accordingly, Defendants' motion is denied as to the Tenth and Eleventh Claims for Relief.[9]

In all, the blunderbuss presentation here is not at all suitable for a Rule 12(b)(6) motion. The idea that this type of presentation should be converted to a motion for summary judgment is likewise not compelling. The parties are at loggerheads over almost every fact alleged and most, if not all, of the documents presented by Defendants are hearsay.

Once discovery is completed and the Court's Individual Rules are complied with, the Court will be in a better position to address many of these issues. For now, and accepting as true

---

[9] The Court does note that neither is a claim for relief. Rather the recitation associated with those "claims for relief" make clear they are remedies. Remedies are not claims for relief.

Plaintiff's allegations in the First Amended Complaint, most of these claims for relief survive the motion to dismiss.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED as to the Eighth Claim for Relief (violation of Civil Service Law § 75-b) and Ninth Claim for Relief (only to the extent that it is based on a violation of NYLL § 201-d(2)(c)). The motion is otherwise DENIED consistent with this Opinion.

Defendants are directed to file an answer to the First Amended Complaint within 10 days of the date of this Order.

The Clerk of Court is respectfully directed to terminate the motion sequence pending at Doc. 34.

**SO ORDERED:**

Dated:   White Plains, New York
         May 7, 2024

_____
PHILIP M. HALPERN
United States District Judge