UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
BROOKE BALCHAN,                                    :
                    Plaintiff,                :
v.                                                 :
                                      :
NEW ROCHELLE CITY SCHOOL                           :
DISTRICT, THE BOARD OF EDUCATION                   :    **OPINION AND ORDER**
OF NEW ROCHELLE CITY SCHOOL                        :
DISTRICT, COREY REYNOLDS, GAIL                     :    23 CV 6202 (VB)
JOYNER, TRACI JACKSON, JONATHAN                    :
RAYMOND, NATALIE ALI, Individually, and            :
as Aiders and Abettors,                            :
                                      :
                    Defendants.               :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Brooke Balchan brings this action against the New Rochelle City School District (the "District"), the District's Board of Education (the "Board"), Dr. Corey Reynolds, Dr. Gail Joyner, Traci Jackson, Jonathan Raymond (the "Superintendent"), and Natalie Ali.  Plaintiff asserts fourteen causes of action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 et. seq. ("Title VII"), the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k) ("PDA"), the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg, et. seq. ("PWFA"), the New York State Human Rights Law, N.Y. Exec. Law § 296 et. seq. ("NYSHRL"), 42 U.S.C. § 1983, the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et. seq., New York Labor Law ("NYLL") §§ 201(d), 206-c and 215, and the Fair Labor Standards Act, 29 U.S.C. §§ 201 et. seq. ("FLSA").

      Now pending is defendants' motion for summary judgment.  (Doc #104).

      For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

**BACKGROUND**

The parties have submitted briefs, statements of material facts pursuant to Local Civil Rule 56.1, and declarations with exhibits.[1] These submissions reflect the following factual background.

I.     Plaintiff's Employment at the District

Dr. Balchan was employed by the District as its Medical Director from July 2017 until her termination in October 2023. The terms and conditions of her employment were governed by a collective bargaining agreement between the District and the New Rochelle Administrative and Supervisory Association (the "CBA"). Dr. Balchan did not get vacation days, but was entitled to take personal days pursuant to the CBA. Plaintiff identifies as Jewish, and she gave birth on or about February 3, 2022.

Between 2021 and 2022, the District instituted disciplinary proceedings against plaintiff arising from events in December 2020. As a result of these proceedings, plaintiff was administratively reassigned to work from home. In May 2022, plaintiff was served with

---

[1]     Doc. #95-1 is the operative 56.1 statement for purposes of summary judgment. (Doc. #103).

Additionally, at a conference held on July 7, 2026, conference, Judge Halpern reminded plaintiff that her response to defendants' Rule 56 statement must comply with Local Civil Rule 56.1, which requires a counterstatement with "correspondingly numbered paragraph[s] admitting or denying" each purportedly undisputed fact in a 56.1 statement, with citations to admissible evidence. Judge Halpern also warned plaintiff that any facts not properly controverted would be deemed admitted. The Court now finds that plaintiff's Rule 56.1 counterstatement largely fails to comply with Local Civil Rule 56.1 and Fed. R. Civ. P. 56(c) because it does not provide citations to admissible evidence supporting plaintiff's contentions. However, in an exercise of its discretion, the Court will construe plaintiff's other submissions as supplemental Rule 56.1 statements of fact to the extent those submissions (i) directly address facts set forth in defendants' 56.1 statement, (ii) are supported by admissible evidence in the record, and (iii) do not specifically controvert the facts deemed admitted in the operative 56.1 statement. See Little v. City of New York, 487 F. Supp. 2d 426, 432 (S.D.N.Y. 2007).

disciplinary charges pursuant to Section 75 of the New York Civil Service Law, alleging misconduct, incompetence, and insubordination in connection with those events.  While the Section 75 charges were pending, the District converted Dr. Balchan's administrative reassignment to an unpaid suspension.

On June 30, 2022, a Section 75 proceeding was held, which addressed the allegations about Dr. Balchan's conduct and performance during the period leading up to the suspension.

II.     Plaintiff's Request for Child-Related Leave

On June 1, 2022—the day Dr. Balchan was served with the Section 75 disciplinary charges—she emailed defendant Reynolds, the Assistant Superintendent for Human Resources ("HR"), the following:

> I would like to apply for paid family leave for child/family bonding.  Can you send me the appropriate documentation at your earliest convenience and provide me with the contact information for the District's PFL insurance provider?

(Doc #121 ("Epstein Decl.") Ex. Z at 1).  Dr. Reynolds responded:

> I am unaware of what kind of child care leave you might need or for which you are eligible, as I do not know your current circumstances.  However, please note that you are currently on an unpaid suspension, pursuant to [] Section 75.  At the conclusion of the unpaid suspension (on July 1st) and pending the conclusion of the Section 75 disciplinary proceeding, if you need to discuss a child care leave of some type, I would be available to speak with you about your personal circumstances that require you to take a leave.

(Id.).

III.    Plaintiff's Return to Work

In August 2022, the Section 75 hearing officer, Kenneth Bernstein, Esq. (the "Hearing Officer"), issued a Report and Recommendation.  He found plaintiff guilty of incompetence and misconduct on some charges and recommended the imposition of a letter of reprimand.  The Board formally adopted those findings and, on September 12, 2022, "directed [plaintiff] to attend

3

a re-entry meeting" on September 19, 2022.  (Doc #122 ("Gilbert Decl.") Ex. 2).  The parties dispute exactly when Dr. Balchan was to return to resume her duties.  Dr. Reynolds testified she was expected to return to work on September 19, the date of the re-entry meeting.  Plaintiff avers the notice did not specify a return date and that she was told during the September 19 meeting to resume her duties on October 3, 2022.

IV.    The Re-Entry Meeting and Request for Personal Days

On September 12, 2022—the same day the District issued the re-entry meeting letter— Dr. Balchan submitted a request in "AESOP," the District's leave-tracking software, seeking to take personal days for September 22, 23, 28, 29, 30, and identifying the days as "Pre-planned travel abroad" and "religious observation."  (Epstein Decl. Ex. CC).  The AESOP entry did not reference the birth of Dr. Balchan's child or FMLA leave.

The District was closed for the Jewish holiday, Rosh Hashanah, on September 26 and September 27, 2022.  The CBA provides that personal days taken immediately before or after a "holiday period" require prior approval by the Superintendent.  The CBA does not define "holiday period."  However, defendant Jackson, the Executive Director for Human Resources and Dr. Reynolds's direct subordinate, testified Rosh Hashanah is not treated as a CBA "holiday period."  (Gilbert Ex. 4 at Tr. 14–15, 726–731).  The parties dispute whether the CBA prohibits the use of personal days for travel or vacation.

According to Dr. Balchan, she informed administrators during the re-entry meeting on September 19, 2022, that she required time to adjust her infant's breastfeeding schedule to align with her work breaks and requested approximately two weeks—an interval she understood would incorporate the personal days entered in AESOP—so she could transition her child and

4

return on October 3. Dr. Balchan further testified Dr. Reynolds expressed no objection to her remaining on administrative reassignment prior to using the requested personal days.

Defendants dispute plaintiff's account. Defendants maintain plaintiff stated she would need office space for breastfeeding and to ensure child care was in place, but did not mention leave related to bonding or transition. Dr. Reynolds testified he informed Dr. Balchan he was not aware of any request or approval and would need to inquire with the District.

On September 21, 2022, plaintiff asked Jackson to confirm the AESOP personal days were recorded as approved and that her first day to report to the office would be October 3. Plaintiff told Jackson she would have limited access to email and phone service during her absence. As a result of plaintiff's outreach to Jackson, Dr. Reynolds separately reviewed plaintiff's request and emailed plaintiff, explaining that plaintiff had been expected to return on September 19, and reminded her that the requested five contiguous personal days fell directly before and after the District's Rosh Hashanah closing dates. He further advised that personal days may not be used for vacations, and therefore—"to the extent that you wish to use these days for purposes of a vacation"—her request was denied. (Epstein Decl. Ex. BB at 8). Dr. Reynolds followed up citing the specific CBA provision and requesting the basis for Dr. Balchan's leave request in writing.

Dr. Balchan did not respond to Dr. Reynolds's September 21 emails until September 28, 2022, after she returned from a trip to Trinidad and Tobago. In her September 28 email response, she described the requested days as including religious observance for Rosh Hashanah and Yom Kippur and other personal business. She complained she was being "discriminated against for my religion or my need to plan for my family" and retaliated against for reporting concerns to Jackson following the re-entry meeting. (Epstein Decl. Ex. BB at 8).

5

V.    Plaintiff's Return from Travel Abroad

A meeting was convened on October 7, 2022, to discuss Dr. Balchan's September absences. Dr. Reynolds, Jackson, Dr. Balchan, and her union representative attended. At that meeting Dr. Balchan was asked to describe the religious observances she performed while in Trinidad and Tobago. She stated on each day of the trip she "attended a religious service, . . . reflected and planned and . . . prayed," and described the trip as a "spiritual religious observance." (Epstein Decl. Ex. FF at Tr. 15, 18). She expressed concerns surrounding how the District handled her leave requests and noted there "could have been an alternative . . . to have those days qualify as time off to transition my family." (Id. at Tr. 25–26). When asked whether she had sought FMLA leave at the September 19 re-entry meeting, Dr. Balchan stated: "I requested information and I put in for five days. So by law, if I've asked for something that was going to be five days or longer, the district should have followed up with the details." (Id. at Tr. 26). She also stated she had requested time to "transition [her] family," that no specific return date had been provided in the re-entry notice, and that she and the District had agreed that a reasonable transition period would be approximately two weeks and would include the personal days she had entered in AESOP. (Id. at Tr. 26–28).

At the conclusion of the October 7 meeting, Dr. Reynolds directed Dr. Balchan to submit documentation concerning the religious observance and personal business performed during her trip. Immediately after the meeting, Dr. Joyner, the Assistant Superintendent of Student Support Services and plaintiff's supervisor, attempted to approve plaintiff's request to attend an unrelated conference in the AESOP system and accidentally approved the September personal days request as well. On October 12, 2022, plaintiff responded to Dr. Reynolds's directive by providing the

6

airline confirmation, email correspondence between plaintiff and Dr. Reynolds, and a screenshot of the inadvertent AESOP approval.

VI.    Plaintiff's Complaints against Defendants

On October 9, 2022, Dr. Balchan filed a "formal complaint" against Dr. Reynolds alleging he had discriminated against her on the basis of religion and failed to offer her FMLA leave.  She also filed a complaint with the New York State Division of Human Rights and the Equal Employment Opportunity Commission alleging religious discrimination.  The District engaged outside counsel to conduct an investigation into the allegations.  Dr. Balchan declined to participate in an interview because she believed outside counsel had a conflict of interest.

On March 7, 2023, outside counsel notified Dr. Balchan of the investigation's findings. Counsel found:  (i) Dr. Reynolds did not discriminate against plaintiff and did not harass, bully, intimidate or demean her at the October 7 meeting; (ii) Dr. Joyner did not "harass or disrespect[]" plaintiff; (iii) Dr. Reynolds did not agree to or approve the requested personal days and no District employee discriminated against plaintiff based on her religion; (iv) the District did not violate the FMLA; and (v) Dr. Reynolds had not engaged in any pattern of retaliatory conduct against plaintiff.  (Epstein Decl. Ex. MM).

At a meeting on March 14, 2023, the Board voted to place Dr. Balchan on administrative leave.  That same day, just two hours before the start of the Board meeting, plaintiff filed a lawsuit in state court against the District and certain individuals alleging discrimination and retaliation on the basis of her religion.  The next day, Superintendent Raymond issued a letter informing plaintiff of the Board's decision.

VII.    Re-Entry and Subsequent Workplace Issues

After Dr. Balchan returned to work in the fall of 2022, various employees complained about her job performance and disruptive behavior.

For example, on October 24, 2022, plaintiff emailed other district employees, including defendant Ali and non-party Kristina Goubeaud, asking them to provide her with a written description of their roles and responsibilities and to name any other administrators to whom they reported. Ms. Goubeaud forwarded the request to Dr. Reynolds and Dr. Joyner expressing discomfort with the request. Dr. Joyner responded:

> Be advised you are not to attend any meetings other than the ones that FUSE and my office agreed upon and were sent to you via the meeting schedule for the year. Additionally, you are directed not to send any information to Dr. Balchan. If there is a request to be filled, it will be addressed via my office.

(Gilbert Decl. Ex. 14 at 8).

On December 8, 2022, the President of the New Rochelle Federation of United School Employees ("FUSE") emailed the Superintendent expressing "ongoing frustration" with Dr. Balchan because she denied multiple personal day requests made by her staff, copied the nursing staff on emails relating to personnel issues concerning office staff members, and weakened the relationship she had with her staff. (Epstein Decl. Ex. LLL).

Throughout this time period, Dr. Balchan was also submitting complaints about other staff. She complained that her hourly clerk reported that "Ali has been eavesdropping on her conversations and bossing her around." (Epstein Decl. Ex. MMM). Plaintiff claims defendants removed Ali from her supervision after she submitted this complaint. (Doc. #111 ¶ 88).

On January 27, 2023, Ms. Goubeaud expressed frustration that plaintiff was unprepared for meetings, was making untrue claims, and continually confused the roles of medical and non-medical staff.

8

Also in January 2023, Dr. Reynolds received an unsolicited email from non-party Sabita

Suraj Sookdeo, a former friend of plaintiff's. Ms. Sookdeo stated she was with plaintiff during

her September 2022 trip to Trinidad and Tobago. Ms. Sookdeo explained:

> [Dr. Balchan's] trip consisted of outdoor recreational activities, consumption of alcohol, dinners at high-end restaurants and shopping for a house to purchase with a few real estate agents who can also be contacted to attest to this account of events. During no part of her trip was religious practices or observances involved.

(Epstein Decl. Ex. LL at 2).

VIII.    Disciplinary Action against Dr. Balchan

On April 11, 2023, after Dr. Balchan had been put on administrative leave, the Board

authorized charges against her pursuant to Section 75. The next day, plaintiff was served with a

statement of charges, charging her with misconduct, incompetence and insubordination. The

statement of charges consisted of nineteen charges, including Charge 9:

> On or about October 9, 2022, respondent inappropriately and/or inaccurately and/or unprofessionally and/or maliciously and/or with the intent to deceive filed a false and/or inaccurate and/or erroneous and/or misleading complaint of "harassment" and/or "religious discrimination" against the Assistant Superintendent for Human Resources Dr. Corey Reynolds related to the District's review of the basis for and/or the circumstances under which respondent requested and/or utilized personal days between Thursday, September 22, 2022 through Friday, September 30, 2022[;]

Charge 10:

> On or about October 12, 2022, respondent inappropriately and/or inaccurately and/or unprofessionally and/or maliciously and/or with the intent to deceive filed a false and/or inaccurate and/or erroneous and/or misleading verified complaint with the New York State Division of Human Rights and the United States Equal Employment Opportunity Commission (EEOC) related to the District's review of the basis for and/or the circumstances under which respondent requested and/or utilized personal days between Thursday, September 22, 2022 through Friday, September 30, 2022[; and]

Charge 11:

> On or about March 14, 2023, respondent inappropriately and/or inaccurately and/or unprofessionally and/or maliciously and/or with the intent to deceive filed a false

and/or inaccurate and/or erroneous and/or misleading verified complaint with the New York State Supreme Court, Westchester County, related to the District's review of the basis for and/or the circumstances under which respondent requested and/or utilized personal days between Thursday, September 22, 2022 through Friday, September 30, 2022.

(Epstein Decl. Ex. O).

The remaining charges related to plaintiff's (i) alleged unprofessional and inappropriate conduct with colleagues and supervisors; (ii) unwillingness to perform certain job duties; and (iii) misuse of leave policies. A hearing was scheduled for May 4 and May 5, 2023.

On May 2, 2023, shortly before the hearing was set to begin, Dr. Balchan filed an Order to Show Cause in the pending state court action seeking to enjoin the Section 75 proceeding. The motion was denied. However, as a result of plaintiff's filing, the hearing was adjourned and rescheduled for June 20, 2023.

On June 19, 2023, one day prior to the hearing, new counsel appeared on behalf of plaintiff and requested an adjournment to familiarize himself with the matter. The adjournment was granted. The hearing was rescheduled for July 25 and 26, 2023. A pre-hearing conference was held on June 28, 2023. Plaintiff's counsel made a motion at the pre-hearing conference for the Hearing Officer to recuse himself for bias. This request was denied.

On July 25, 2023, the parties appeared for the hearing. Dr. Balchan's counsel explained he had only just acquired a copy of the CBA and learned it included a "just cause" provision and the ability to commence arbitration as an alternative grievance procedure. Plaintiff's counsel moved to adjourn the proceeding in order to "avail" plaintiff of that contractual right. (Gilbert Ex. P at Tr. 6). The Hearing Officer denied plaintiff's application for adjournment, after which plaintiff and her counsel walked out of the hearing. The hearing was then conducted in absentia.

10

The hearing, at which eight witnesses testified, took place over four days.  Plaintiff and her counsel did not attend and plaintiff did not provide testimony.  On September 23, 2023, the Hearing Officer issued his Report and Recommendation, which substantiated all nineteen charges and their related specifications.  In addition to substantiating the charges, the Hearing Officer found:  Dr. Balchan swore falsely that her trip to Tobago in September 2022 (i) was sacred to her Jewish religious observance; (ii) was for religious observance and that the trip had significant spiritual and religious significance to her; (iii) was very sacred to her as a Jewish woman; and (iv) was part of her sincerely held religious beliefs, center to the core of her existence.  (Epstein Decl. Ex. T at 25).

As it related to the allegations of misconduct, the Hearing Officer found (i) plaintiff was absent from her job responsibilities without approval during the day before and the day after the Jewish holiday period of September 26 and September 27, 2022; (ii) she requested personal leave for September 22, 23, 28, 29 and 30, 2022 and stated it was for religious observance and pre-planned travel abroad; (iii) this request was never approved; (iv) plaintiff willfully ignored the directive of the assistant superintendent that her leave request had not been approved and was strictly prohibited by the parties' CBA; and (v) plaintiff willfully refused to comply with the directive of an assistant superintendent that she provide documentation to justify the request. (Id.).  The Hearing Officer recommended plaintiff be terminated.

On October 14, 2023, the Board adopted the Hearing Officer's recommendation and plaintiff was terminated.  Plaintiff did not commence a proceeding pursuant to Article 78 of the New York Civil Practice Law and Rules to challenge the Hearing Officer's determination or the District's ratification of the determination.

11

In August 2023, while the Section 75 proceeding was still pending, plaintiff commenced a grievance arbitration proceeding, alleging the District lacked just cause to terminate her employment under the CBA.  On June 17, 2025, the arbitrator issued a decision finding that the District had cause to terminate plaintiff's employment.

Plaintiff commenced the instant action on July 18, 2023.

**DISCUSSION**

I.      Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any declarations show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R Civ. P. 56(a); see also Celotex Corp. v. Catr ett, 477 U.S. 317, 322 (1986).[2]

A fact is material when it "might affect the outcome of the suit under governing law . . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."  Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  Zalaski v. Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

---

[2]     Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

If the non-moving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011). "[T]he mere existence of a scintilla of evidence" supporting the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper. Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77,82–83 (2d Cir. 2004). Bald assertions, completely unsupported by admissible evidence, are not sufficient to overcome summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

II.    Collateral Estoppel

Defendants argue plaintiff is collaterally estopped from disputing the Hearing Officer's findings of fact made in connection with the 2023 Section 75 proceeding.

The Court agrees.

13

A.    Legal Standard

Under 28 U.S.C. § 1738, state court judgments have "the preclusive effect the courts of that state would give them." McGuinn v. Smith, 523 F. App'x 764, 765 (2d Cir. 2013) (summary order).  "New York courts give quasi-judicial administrative fact-finding preclusive effect where there has been a full and fair opportunity to litigate." Matusick v. Erie Cnty. Water Auth., 757 F.3d 31, 45 (2d Cir. 2014).  "This rule applies to findings made by administrative officers after conducting section 75 hearings." Id.

"A determination whether a full and fair hearing was provided requires consideration of the realities of the prior litigation . . . .  Factors to be considered include, inter alia: 1) the nature of the forum and the importance of the claim in the prior litigation; 2) the incentive to litigate and the actual extent of litigation in the prior forum; and 3) the foreseeability of future litigation[.]" Chartier v. Marlin Mgmt., LLC, 202 F.3d 89, 94 (2d Cir. 2000).

B.    Analysis

The Court finds plaintiff was afforded a full and fair opportunity to litigate and that the factual findings of the Section 75 hearing have preclusive effect.  The Section 75 hearing was a formal evidentiary hearing, which took place over four days with eight witnesses testifying.  The hearing concerned serious allegations:  whether plaintiff engaged in "incompetence, insubordination, neglect of duty and dereliction of duty." (Epstein Decl. Ex T. at 2).  Given the seriousness of the allegations, Dr. Balchan knew the findings of the hearing could result in her termination, especially because she had been placed on administrative leave prior to the commencement of the hearing.  Further, future litigation was foreseeable as plaintiff had already commenced a state court lawsuit and stated an intent to pursue arbitration.

14

Plaintiff argues the Section 75 allegations were not fully or fairly litigated because she did not participate in the hearing.  This argument is unavailing.  Irrespective of her alleged reasons for not participating in the hearing,[3] the record clearly establishes plaintiff was given every opportunity to litigate and present her defenses.  Plaintiff was provided with a copy of the charges from the Board and was adequately represented by competent counsel.  At the commencement of the hearing, plaintiff's counsel moved for an adjournment, stating that if the adjournment was denied, the hearing should proceed in absentia.  (Epstein Decl. Ex. P at Tr. 4– 27).  Plaintiff and counsel then walked out of the hearing.  (Id).  Neither plaintiff, nor her counsel, attended any of the subsequent proceedings.  Plaintiff cannot now complain she was not given a full and fair opportunity to contest the issues litigated when she did not avail herself of the opportunity to do so.  See Amalgamated Sugar Co. v. NL Indus., Inc., 825 F.2d 634, 642 (2d Cir. 1987) ("[W]here a party fails to take full advantage of an opportunity to litigate, he may not complain that the matter was not fully litigated.").  Accordingly, the factual findings of the hearing officer are entitled to preclusive effect.

Plaintiff argues that because the Hearing Officer did not consider any evidence or make any factual findings relating to her eligibility for FMLA leave and how that impacted her leave request, none of the Section 75 factual findings can be afforded preclusive effect.  (Doc. #112). Not so.  Plaintiff is not collaterally estopped from bringing claims alleging violations of the FMLA.  See Leon v. New York City Dep't of Educ., 612 F. App'x 632, 635 (2d Cir. 2015).  But she is precluded from disputing the factual findings of the Section 75 hearing that may be

---

[3]     Specifically, plaintiff alleged she did not participate in the hearing because "Hearing Officer Bernstein had repeatedly displayed extreme bias in favor of the District.  Dr. Balchan became aware that her contract included a just cause provision and grievance procedure culminating in arbitration." (Doc. #112 at 5).

relevant to <u>any</u> of her claims—including violations of the FMLA—to the extent they were raised and decided during the Section 75 hearing.  <u>See</u> <u>e.g.</u>, <u>Dibiase v. Barber</u>, 2008 WL 4455601, at *13 (E.D.N.Y. Sept. 30, 2008).

III.    <u>Religious Discrimination Claims – Section 1983 Free Exercise (Count I), Title
        VII (Count III), and NYSHRL (Count XII)</u>

Plaintiff alleges she was discriminated against on the basis of religion in violation of Section 1983 (Count I), Title VII (Count III), and the NYSHRL (Count XII).  Defendants argue they are entitled to summary judgment on these claims because plaintiff cannot demonstrate she held a bona fide religious belief conflicting with an employment requirement.

The Court agrees with defendants.

A.    <u>Legal Standard</u>

Discrimination claims under Title VII and the NYSHRL are "analytically identical," so the Court applies the same legal standard of proof under both statutes.  <u>Lenzi v. Systemax, Inc.</u>, 944 F.3d 97, 107 n.7 (2d Cir. 2019).  Constitutional claims alleging religious discrimination under Section 1983 are evaluated under the same standard as Title VII.  <u>Billings v. New York State Dep't of Corr. & Cmty. Supervision</u>, 2021 WL 4150925, at *8 (S.D.N.Y. Sept. 10, 2021).

Title VII protects employees from discrimination based on certain protected characteristics, including religion.  <u>See</u> 42 U.S.C. § 2000e-2(a).  It not only prohibits intentional discrimination but affirmatively requires employers to "make reasonable accommodations, short of undue hardship, for the religious practices of . . . employees and prospective employees." <u>Baker v. The Home Depot</u>, 445 F.3d 541, 546 (2d Cir. 2006).

To make out a <u>prima</u> <u>facie</u> failure-to-accommodate claim, plaintiff must show:  (i) she held a bona fide religious belief conflicting with an employment requirement; (ii) she informed the employer of this belief; and (iii) she was disciplined for failure to comply with the

16

conflicting employment requirement.  Knight v. Conn. Dep't of Pub. Health, 275 F.3d 156, 167

(2d Cir. 2001).  To determine whether a plaintiff holds a bona fide religious belief, the Court is

bound to consider "whether the beliefs professed by [the plaintiff] are sincerely held and

whether they are, in his own scheme of things, religious." Bob v. Madison Sec. Grp., Inc., 2016

WL 6952259, at *8 (S.D.N.Y. Nov. 28, 2016).  If the plaintiff can make out a prima facie case,

"the burden then shifts to the employer to show it could not accommodate the employee['s]

religious beliefs without undue hardship." Id.

B.    Analysis

Defendants argue plaintiff cannot make out a prima facie case of religious discrimination

because her religious beliefs did not conflict with the employment requirements.

The Court agrees.

Here, plaintiff cannot show she had a sincere and religious belief which required her to

take leave to "observe the Days of Awe." (Doc. #112 at 19).  The Hearing Officer substantiated

the charges alleging plaintiff was unthruthful regarding the religious purpose of her trip.

(Epstein Decl. Ex. T at 22).  He further found plaintiff did not participate in any religious activity

while there. (Id. at 25–26).  These factual determinations—which are given preclusive effect—

foreclose plaintiff from arguing she held a bona fide religious belief that conflicted with an

employment requirement, and thus doom her religious discrimination claims. See e.g., Bailey v.

Associated Press, 2003 WL 22232967, at *8 (S.D.N.Y. Sept. 29, 2003).

Accordingly, defendants are entitled to summary judgment on plaintiff's Section 1983,

Title VII, and NYSHRL religious discrimination claims.

17

IV.    Retaliation Claims – Title VII (Count V), Section 1983 (Count XI), and NYSHRL (Count XII)

Plaintiff argues she was retaliated against for submitting complaints of discrimination in violation of Title VII (Count V), Section 1983 (Count XI), and the NYSHRL (Count XII). Defendants argue plaintiff cannot establish she engaged in protected activity because plaintiff's complaints of religious discrimination were made in bad faith.

The Court agrees with defendants, but only with respect to some of the alleged protected activities.

A.    Legal Standard

Retaliation claims brought pursuant to Title VII, Section 1983, and the NYSHRL are reviewed under the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Holcomb v. State Univ. of N.Y. at Fredonia, 698 F. App'x 30, 31 (2d Cir. 2017) (summary order).  To make out a prima facie case of retaliation, "a plaintiff must demonstrate that (1) she engaged in protected activity, (2) the defendant was aware of that activity, (3) she was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions."  Carr v. N.Y.C. Transit Auth., 76 F.4th 172, 180 (2d Cir. 2023).

"Once a prima facie case of retaliation is established, the burden of production shifts to the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action." Raniola v. Bratton, 243 F.3d 610, 625 (2d Cir. 2001).  If the employer demonstrates a legitimate, non-discriminatory reason, then "[t]he burden shifts . . . back to the plaintiff to establish, through either direct or circumstantial evidence, that the employer's action was, in fact, motivated by discriminatory retaliation."  Id.

18

B.        Analysis

Plaintiff claims defendants retaliated against her for:  (i) reporting to the Board and the Superintendent on October 9, 2022, that she was being subjected to unlawful religious discrimination and retaliation; (ii) filing a complaint at the State Division of Human Rights and EEOC on October 12, 2022, alleging religious discrimination; (iii) filing a complaint in state court on March 14, 2023, alleging religious discrimination and retaliation; (iv) complaining to Dr. Reynolds on September 28, 2022, that she was being discriminated against for her religion and need to plan for her family; (v) requesting accommodations in the form of designated time and locations to breastfeed and/or pump; and (vi) complaining at the October 7, 2022, meeting about the District's failure to honor her requests for accommodations.

Defendants argue plaintiff cannot establish she engaged in protected activity because plaintiff's complaints of religious discrimination were made in bad faith.

1.        Not Protected Activity

To qualify as protected activity, an employee's actions must be taken "to protest or oppose statutorily prohibited discrimination."  Wright v. Monroe Cmty. Hosp., 493 F. App'x 233, 236 (2d Cir. 2012).  "Such activity can be either formal, such as the filing of formal discrimination charges, or informal, such as making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges."  Champion v. N.Y. State Off. of Parks, Recreation & Historic Pres., 500 F. Supp. 3d 26, 48 (S.D.N.Y. 2020).  An employee's complaint, however, must have been based on a good faith and reasonable belief that she was opposing an unlawful employment practice.  Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990).

19

Plaintiff's formal complaints of religious discrimination ((i) through (iii) above) are not protected because they were not made in good faith.  The Hearing Officer's findings substantiating nineteen disciplinary charges, including the three charges bearing directly on plaintiff's formal complaints of discrimination, preclude plaintiff from disputing the content of the substantiated charges.  See supra Section II.A.  Here, the Hearing Officer found it was established by substantial evidence that Dr. Balchan filed false and misleading complaints in connection with the District's review of the personal days taken between September 22 and September 30, 2022; and acted "inappropriately" and "innacurately" when she filed false complaints against Dr. Reynolds (Charge 9), a false verified complaint with the New York State Division of Human Rights and EEOC (Charge 10), and a false verified complaint with the New York State Supreme Court (Charge 11).  (Epstein Decl. Ex. O, 10–14).  The Hearing Officer also found plaintiff falsely represented her time off was necessary for the purposes of religious observance and filed complaints of discrimination notwithstanding the false representations. (Id.).

"The reasonableness of the plaintiff's belief is to be assessed in light of the totality of the circumstances."  Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998).  And the reasonableness of plaintiff's belief is not reasonable "simply because he or she complains or something that appears to be discrimination in some form."  Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 15 (2d Cir. 2013).  In light of the Hearing Officer's determination that Plaintiff engaged in the alleged conduct of making false reports of discrimination as described in Charges 9, 10, and 11, no reasonable juror could find she possessed a "good faith, reasonable belief" she was opposing an unlawful employment practice."  See, e.g., Sanders v. Madison

Square Garden, L.P., 525 F. Supp. 2d 364, 367 (S.D.N.Y. 2007) (false complaints not protected activity under Title VII).  She therefore cannot establish the first three alleged activities are protected activity under Title VII and the NYSHRL.

　　　　2.　　　　Protected Activity

As to the other alleged complaints ((iv) through (vi) above), the Court concludes these qualify as protected activities.

A complaint that an employer has discriminated on the basis of a pregnancy-related condition constitutes protected activity.  See, e.g., Brown v. Metro. Dental Assocs., 2023 WL 5154415, at *9 (S.D.N.Y. Aug. 10, 2023).  On September 22, 2022, Dr. Reynolds emailed plaintiff that she had "indicated that [she] would need time to transition with [her] newborn."  (Epstein Decl. Ex BB at 8).  On September 28, 2022, plaintiff responded and stated "I do not deserve to be discriminated against for . . . my need to plan for my family."  (Id. at 7–8).  A reasonable jury could, therefore, find that plaintiff was opposing an unlawful discriminatory practice—discrimination based on a protected pregnancy-related conditition, the need to transition a newborn—through her response to Dr. Reynolds and the Board.  See Paulson v. Tidal, 2018 WL 3432166, at *2 (S.D.N.Y. July 16, 2018) (collecting cases) (discrimination on basis of breast milk expression constitutes unlawful discriminatory practice).[4]

---

[4]　　The email also states: "I do not deserve to be discriminated against for my religion." (Epstein Decl. BB at 8).  Standing alone, this would not constitute protected activity because plaintiff did not have a good faith basis for complaining of religious discrimination.  However, because the email also alleged she was being discriminated against based on her need to "plan for [her] family," the entire September 28th complaint constitutes protected activity.  (Id.).

21

Similarly, there is a genuine factual dispute whether Dr. Balchan sought breastfeeding accommodations at or around the September 19 and October 3 re-entry meetings and whether defendants understood those requests to be breastfeeding related.[5] "[P]rotected activity can include requests for reasonable accommodations, such as pregnancy-related accommodations." Van Denburgh v. New York, 2025 WL 2483415, at *20 (N.D.N.Y. Aug. 28, 2025); Farmer v. Shake Shack Enters., LLC, 473 F. Supp. 3d 309, 331–32 (S.D.N.Y. 2020).

Finally, reading the record in the light most favorable to plaintiff, her assertions that the District had not honored her accommodation requests at the October 7 meeting constitute opposition to an unlawful employment practice and therefore also qualify as protected activity.

### 3.    Causation

Defendants also challenge the fourth prong of plaintiff's prima facie case of retaliation—causation.  (Doc. #108 at 19).  The Court finds plaintiff has proffered no evidence—direct or circumstantial—from which causation could be inferred.

Causation can be established:  "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus against the plaintiff by the defendant." Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 117 (2d. Cir. 2000).

---

[5]    To the extent plaintiff argues she engaged in protected activity by requesting leave to care for her infant child, such requests are not protected under Title VII or the NYSHRL. See Luna v. NYC Taxi & Limousine Comm'n, 2022 WL 20319227, at *18 (E.D.N.Y. Sep. 7, 2022) (report and recommendation) (holding requesting accommodation based on childcare needs is not protected because familial status by itself is not a protected class).

Temporal proximity between protected activity and an adverse action can suffice to show causation at the prima facie stage, and the Second Circuit has recognized that a gap of four to seven months may not be "prohibitively remote." Summa v. Hofstra Univ., 708 F.3d 115, 128 (2d Cir. 2013); Hubbard v. Total Commc'ns, Inc., 347 F. App'x 679, 681 (2d Cir. 2009) (summary order). The last alleged protected communication here occurred on October 7, 2022, and the Board first placed plaintiff on administrative leave on March 14, 2023—approximately five months later. That interval, standing alone, could support an inference of causation.

Importantly, however, temporal proximity is not dispositive. When evidence of intervening significant misconduct fully justifies the adverse employment action, the probative value of temporal proximity is extinguished. See Joseph v. Marco Polo Network, Inc., 2010 WL 4513298, at *18 (S.D.N.Y. Nov. 10, 2010); Gubitosi v. Kapica, 154 F.3d 30, 33 (2d Cir. 1998).

Here, the Section 75 hearing record establishes such significant intervening events. The Hearing Officer found plaintiff filed false complaints concerning her September leave (Charge 10), failed to comply with directives to provide supporting documentation (Charge 16), was absent without approval for the September 22–30 period (Charges 1-7), and otherwise engaged in conduct the Hearing Officer deemed unprofessional and disruptive. (Epstein Decl. Ex. T). Those adverse conduct findings—which are afforded preclusive effect—postdate plaintiff's September and October communications and were substantial grounds for the Board's decision to place plaintiff on leave and to terminate her employment. In re Sokol, 113 F.3d 303, 307 (2d Cir. 1997); Matusick v. Erie Cnty. Water Auth., 757 F.3d at 49. Thus, the temporal gaps here

23

do not establish a triable inference that the adverse actions were caused by plaintiff's

protected activity.

Accordingly, defendants are entitled to summary judgment on plaintiff's

retaliation claims.

VII.     Pregnancy Discrimination – PDA (Count IV) and NYSHRL (Count XIII)

Title VII was amended in 1978 to clarify that pregnancy discrimination is a form

of gender discrimination prohibited by Title VII.  See 42 U.S.C. § 2000e(k).  The PDA

provides, "women affected by pregnancy, childbirth, or related medical conditions shall

be treated the same for all employment-related purposes . . . as other persons not so

affected but similar in their ability or inability to work."  See 42 U.S.C. § 2000e(k).

The NYSHRL also prohibits discrimination against an employee based on gender

identity or expression, martial status or sex.  N.Y. Exec. Law § 296(1).  Although the

NYSHRL does not explicitly name pregnancy as a form of discrimination, pregnancy

discrimination falls within the prohibitions set forth in the NYSHRL.  See e.g., Brown v.

Metro. Dental Assocs., 2023 WL 5154415, at *4 (S.D.N.Y. Aug. 10, 2023); Farmer v.

Shake Shack Enters., LLC, 473 F. Supp. 3d 309, 323 (S.D.N.Y. 2020).

Plaintiff's discrimination claims are analyzed under the McDonnell Douglas

burden shifting framework.

To make out a prima facie case of pregnancy discrimination, a plaintiff must

show:  (i) she is a member of a protected class; (ii) she was qualified for the position; (iii)

she suffered an adverse employment action; and (iv) the adverse employment action

occurred under circumstances giving rise to an inference of discriminatory intent.  Collins

v. N.Y.C. Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002).  Plaintiff's "burden of

establishing a <u>prima</u> <u>facie</u> case is not onerous and has been frequently described as minimal." <u>Norton v. Sam's Club</u>, 145 F.3d 114, 118 (2d Cir. 1998).

Once a plaintiff presents a <u>prima</u> <u>facie</u> case, the defendant bears the burden of articulating a legitimate, non-discriminatory reason for the employment action. <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 42 (2d Cir. 2000). If a defendant meets this burden, the plaintiff must point to evidence sufficient to permit a rational factfinder to conclude the employer's explanation is merely a pretext for actual discrimination. <u>Id</u>.

To satisfy the burden of showing pretext on summary judgment, a plaintiff "need only show that the employer's stated reason—even if true or factually accurate—was not the real reason, in the sense that it was not the entire reason due to a coexisting impermissible consideration." <u>Bart v. Golub Corp.</u>, 96 F.4th 566, 575 (2d Cir. 2024). Plaintiff must "produce admissible evidence showing circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." <u>Id</u>. at 576. A plaintiff may show pretext "by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nondiscriminatory reason for its action." <u>Ramos v. Marriott Intern., Inc.</u>, 134 F. Supp. 2d 328, 343 (S.D.N.Y. 2001). "Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." <u>Holcomb v. Iona College</u>, 521 F.3d at 137.

A.      <u>Prima Facie Case</u>

The dispute in this case hinges on the first and fourth elements of plaintiff's <u>prima</u> <u>facie</u> case—whether she was a member of a protected class and whether the adverse

employment action occurred under circumstances giving rise to an inference of discriminatory intent.

As to the first element, plaintiff argues she was a member of a protected class based on her status as a nursing mother.  Courts in this Circuit have deemed lactation to constitute a related medical condition for purposes of the PDA.  Paulson v. Tidal, 2018 WL 3432166, at *2 (S.D.N.Y. July 16, 2018); E.E.O.C. v. Vamco Sheet Metals, Inc., 2014 WL 2619812 at *6 (S.D.N.Y. June 5, 2014).  Because plaintiff claims defendants discriminated against her because of her need to "adapt her infant's nursing schedule" (Doc. #112 at 12), she sufficiently establishes that she is a member of a protected class.

Turning to the fourth element, this element may be satisfied by showing the plaintiff's "position remained open and was ultimately filled by a non-pregnant employee," or that "the discharge occurred in circumstances giving rise to an inference of unlawful discrimination."  Quaratino v. Tiffany & Co., 71 F.3d 58, 64 (2d Cir. 1995).  Here, viewing the record in the light most favorable to plaintiff, she has proferred sufficient evidence that her position was filled in an interim capacity by Dr. Louis Corsaro, a member outside of the protected class.  Thus, plaintiff has met her minimal burden of making out a prima facie case of pregnancy discrimination.

B.      Non-Discriminatory Reasons

Defendants have articulated legitimate, non-discriminatory reasons for plaintiff's termination.  In the Section 75 hearing, plaintiff was found to have misused leave policy, submitted false complaints, and engaged in disruptive behavior.  (Epstein Decl. Ex. T).  Defendants also argue that, prior to instigating the Section 75 charges, they had received

complaints regarding plaintiff and believed she lied to the District regarding her reasons for taking personal leave.  (Doc. #108 at 26).

C.  Pretext

At the third and final step of the McDonnell Douglas analysis, a plaintiff must present "sufficient admissible evidence from which a rational finder of fact could infer that more likely than not [s]he was the victim of intentional discrimination."  Bickerstaff v. Vassar Coll., 196 F.3d 435, 447 (2d Cir. 1999).  A plaintiff "is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors."  Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203 (2d Cir. 1995).  Thus, a plaintiff must "produce admissible evidence showing circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination."  Bart v. Golub Corp., 96 F.4th 566, 576 (2d Cir. 2024).

Plaintiff has not done so.  There is simply nothing in the record that would allow a reasonable jury to conclude plaintiff's pregnancy-related status was a motivating factor in, or that defendants' proffered reason was merely a pretext for, plaintiff's termination. The record is undisputed that plaintiff was terminated only after the Section 75 Hearing Officer's recommendation and the Board's adoption thereof.  (Doc. #95-1 ¶ 34).

Plaintiff points to four instances as evidence of pretext: (i) an email dated October 7, 2022, between Dr. Joyner and the Superintendent; (ii) an email dated October 24, 2022, from Dr. Joyner to plaintiff's staff; (iii) that Ali was enlisted to "spy" on plaintiff; and (iv) Ali's reassignment.  (Doc. #112 at 24–25).  First, the email between Dr. Joyner

and the Superintendent concerns a separate request for leave (Epstein Decl. Ex. GG) and therefore has no bearing on the district's decision to instigate disciplinary charges. Second, nothing about the email from Dr. Joyner to plaintiff's staff (Gilbert Decl. Ex. 14), raises a genuine dispute of fact as to whether defendants' proffered reasons for the employment decisions were pretext for discriminatory animus. Rather, the email merely shows defendants' preference for formalizing department processes and procedures. Third, plaintiff's allegation that her hourly clerk told her that Ali had been "eavesdropping on her conversations" in order to "spy" on plaintiff (Docs. ##95-1 ¶ 102, 112 at 25) constitutes inadmissible hearsay thus cannot create a triable issue of fact that defendant's conduct was more likely than not a pretext for religious discrimination. Finally, plaintiff provides no support for the proposition that Ali's reassignment to report directly to Dr. Joyner is evidence of pretext. (Doc. #112 at 25).

At bottom, plaintiff has not identified any evidence that would be sufficient to permit a rational jury to infer that defendants' proffered explanation for the adverse employment actions—namely, plaintiff's misconduct—was a pretext for pregnancy discrimination.

Accordingly, defendants are entitled to summary judgment on plaintiff's pregnancy discrimination claims under the PDA and the NYSHRL.

VIII.    FMLA Claims (Counts VII and VIII)

Plaintiff brings two types of claims under the FMLA: (i) interference with exercising her FMLA-protected rights, and (ii) retaliation for exercising her FMLA-protected rights.

28

A.      FMLA Interference

Defendants argue plaintiff's FMLA interference claim fails because plaintiff did not give sufficient notice that she sought FMLA leave and ultimately was not denied benefits to which she was entitled under the FMLA.

The Court disagrees.

1.      Legal Standard

The FMLA allows eligible employees to take up to twelve work weeks of unpaid leave per year for specific purposes, including the birth of a child and the need to care for the child.  29 U.S.C. § 2612(a)(1)(A).

To make out a prima facie claim of FMLA interference, a plaintiff must show: "1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 424 (2d Cir. 2016).  The question is essentially "whether the employer in some manner impeded the employee's exercise of his or her right." Potenza v. City of New York, 365 F.3d 165, 168 (2d Cir. 2004) (per curiam).

With respect to the fourth element, the FMLA requires "[i]n any case in which the necessity for leave [due to forthcoming birth of a child] . . . is foreseeable . . . the employee shall provide the employer with not less than 30 days' notice, before the date the leave is to begin," and if the birth is not foreseeable, the employee must give "such notice as is practicable."  29 U.S.C. § 2612(e)(1).  "When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an

29

FMLA-qualifying reason, the employer must notify the employee of [her] eligibility to take FMLA leave within five business days[.]" 29 C.F.R. § 825.300(b)(1). An employer's "[f]ailure to follow the [FMLA] notice requirements may constitute an interference with . . . the exercise of an employee's FMLA rights" 29 C.F.R. § 825.300(e), so long as that failure results in prejudice to the employee. Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 90–91 (2002).

      2.      Analysis

Defendants do not contest that Dr. Balchan was an eligible employee under the FMLA, or that the District is an employer covered by the FMLA. Rather, defendants contend plaintiff never provided sufficient notice of her intention to take FMLA leave. The Court finds plaintiff raises a triable issue of fact as to whether she provided sufficient notice.

On June 1, 2022, plaintiff requested "paid family leave for child/family bonding." (Epstein Decl. Ex. Z at 1). Defendants argue this email does not provide notice to the District that plaintiff "would require FMLA leave more than three . . . months later." (Doc. #108 at 20). However, "an employee need only provide the employer with sufficient information to understand that the circumstances indicate that the FMLA may apply." Coutard v. Mun. Credit Union, 848 F.3d 102, 111 (2d Cir. 2017). And an employee need not expressly assert FMLA rights or even mention the FMLA to meet his or her obligation to provide notice. 29 C.F.R. § 825.301(b).

Viewing the evidence in the light most favorable to plaintiff, her June 1, 2022, email requesting "paid family leave for child/family bonding" could reasonably be construed as providing adequate notice of her intent to take FMLA leave. See, e.g., Saraf

v. W. Publ'g Corp., 2018 WL 7107266, at *15 (S.D.N.Y. Dec. 20, 2018) ("[A] reasonable jury could conclude that Plaintiff provided adequate notice of her intent to take FMLA" when plaintiff had discussed her due date, whether she would be taking maternity leave, and child care leave options with supervisor); Bamett v. Revere Smelting & Refin. Corp., 67 F.Supp.2d 378, 386 (S.D.N.Y.1999) (denying summary judgment on notice grounds when employee had discussed his condition and symptoms with the employer).  Further, Dr. Reynolds's response to plaintiff's email, in which he appears to have acknowledged plaintiff's need for child-related leave, creates even more ambiguity as to whether plaintiff's notice was sufficient.  (Epstein Decl. Ex. Z at 2).

Defendants also argue they are entitled to summary judgment on the ground that plaintiff was not denied benefits to which she was entitled under the FMLA.  (Doc. #108 at 20).

The record is clear that defendants did not refuse to authorize FMLA leave but rather did not approve paid personal days for the purposes of using those days for vacations.  (Doc. #95-1 at ¶ 10; Epstein Decl. Ex. BB).  Plaintiff also did not testify that she affirmatively requested FMLA leave.  (Epstein Decl. Ex. FF at Tr. 25–28).

However, this is not fatal to plaintiff's claim.  "[A]n employer's failure to comply with the FMLA's notification requirements will give rise to an FLMA interference claim, where prejudice to the employee can be shown to have arisen from the failure."  Powell v. Metro One Loss Prevention Servs. Grp., Inc., 2013 WL 3956377, at *9 (S.D.N.Y. July 26, 2013).  Plaintiff argues if defendants had provided plaintiff with the required FMLA notice, she could have arranged her leave in a manner that would not have led to disciplinary action.  (Doc. #112 at 11).  Drawing all permissible inferences in plaintiff's

favor, the Court finds a reasonable jury could agree with plaintiff. (See Epstein Decl. at

Exs. FF at Tr. 26–28; D at 231–32). Thus, plaintiff has raised a genuine issue of material

fact as to whether she would have been able to structure her leave in a way to avoid

disciplinary action had she been provided the proper FMLA notice. See, e.g., Benson v.

Westchester Med. Ctr., 2022 WL 2702544, at *9 (S.D.N.Y. July 12, 2022) ("[I]t is

plausible that, had Plaintiff been advised that his absences might fall under the FMLA, he

would have been able to structure his leave in a way to avoid suspension").

Accordingly, plaintiff's FMLA interference claim may proceed.

B.      FMLA Retaliation

Defendants argue they are entitled to summary judgment on plaintiff's FMLA

retaliation claim.

The Court agrees.

1.      Legal Standard

A retaliation claim under the FMLA is governed by the same burden-shifting

analysis set forth in McDonnell Douglas and discussed above in the context of Title VII

retaliation claims. "To establish a prima faci[e] case of FMLA retaliation, a plaintiff

must establish that 1) [s]he exercised rights protected under the FMLA; 2) [s]he was

qualified for his position; 3) [s]he suffered an adverse employment action; and 4) the

adverse employment action occurred under circumstances giving rise to an inference of

retaliatory intent." Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 429 (2d Cir. 2016).

"If the plaintiff makes out a prima facie case, the defendant must demonstrate a

legitimate, non-discriminatory reason for its actions." Id. The burden then shifts back to

the plaintiff to show that defendant's proffered explanation is pretextual. Id.

2.    Analysis

Plaintiff contends she was terminated and subjected to repeated harassment in retaliation for exercising her FMLA rights.

The Court disagrees.

The termination claim has already been addressed above—namely, that plaintiff has not proferred evidence that defendants' explanation for her termination was pretext for discrimination. See supra Section VII.

As to plaintiff's separate allegation that she was subjected to a hostile interrogation and ongoing harassment, although defendants do not contest plaintiff's prima facie case, plaintiff is not permitted to relitigate factual assertions that were expressly and finally adjudicated against her in the Section 75 proceeding. The Hearing Officer substantiated the charges that plaintiff's formal complaints concerning the re-entry meeting interrogation and subsequent harassment were false and fraudulent. (Epstein Decl. Ex. T at 22). Those prior factual findings are preclusive here. Because plaintiff's interrogation and harassment-based retaliation theory depends on the truth of the very complaints that were rejected in the Section 75 proceeding, she is collaterally estopped from relying on those allegations as the basis for an adverse action.

Accordingly, defendants are entitled to summary judgment on plaintiff's FMLA retaliation claim.[6]

---

[6]    Defendants argue all of plaintiff's FMLA claims should be dismissed because the District honestly believed plaintiff had misused her leave, citing LeBoeuf v. New York Univ. Med. Ctr., 2000 WL 1863762, at *3 (S.D.N.Y. Dec. 20, 2000). However, the court there interpreted such a belief as a legitimate non-discriminatory reason for terminating plaintiff, not as a basis for disposing of FMLA claims altogether. Defendants cite no cases and the Court is aware of none that support the proposition that an employer's belief of misuse, standing alone, is grounds for summary judgment on FMLA claims.

IX.    Section 1983 Stigma-Plus Claim (Count II)

Defendants argue they are entitled to summary judgment on plaintiff's Section 1983 stigma-plus claim because plaintiff can neither establish defendants published false and defamatory statements nor show plaintiff was denied adequate due process.

The Court agrees.

A.    Legal Standard

"Under limited circumstances, government employees may have a cause of action for defamation in the course of, or in connection with, dismissal from government employment." Mudge v. Zugalla, 939 F.3d 72, 80 (2d Cir. 2019). A "stigma-plus" claim "refers to a claim brought for injury to one's reputation (the stigma) coupled with the deprivation of some tangible interest or property right (the plus), without adequate process." DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003). "[T]o constitute deprivation of a liberty interest, the stigmatizing information must be both false . . . and made public . . . by the offending governmental entity." Gentile v. Wallen, 562 F.2d 193, 197 (2d Cir. 1977). Because a defamatory statement is not a constitutional deprivation, as compared to a state tort of defamation, the "plus" must be a specific and adverse action restricting the plaintiff's liberty—such as the loss of employment. Velez v. Levy, 401 F.3d 75, 88 (2d Cir. 2005).

To establish a stigma-plus claim, a plaintiff must allege "(1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." Mudge v. Zugalla, 939 F.3d at 80. "And the statement must be sufficiently public to create or threaten a stigma." Id. at

34

80–81.  However, the availability of adequate process defeats a stigma-plus claim.  Segal

v. City of New York, 459 F.3d 207, 213 (2d Cir. 2006).

        B.      Analysis

Here, plaintiff cannot show defendants publicly made false and defamatory

statements implicating her name and professional reputation.  Plaintiff argues the record

"shows stigmatizing materials have been made public."  (Doc. #112 at 26).  But she cites

nothing from the record to support that proposition.  In fact, the only support she cites

that these "stigmatizing materials" were made public is that the Section 75 charges and

the Hearing Officer's Report and Recommendation are subject to the "Freedom of

Information Law."  (Id. at 26).

The Court is not persuaded.  Under N.Y. Pub. Off. Law § 87, all agency records

are presumptively available for public inspection, unless they fall within an exemption

permitting the agency to withhold certain records. And N.Y. Pub. Off. Law § 89(2)(b)(i)

provides an exemption to the disclosure of employment records.  Plaintiff thus has not

provided, nor is the Court aware of, any evidence the Section 75 charges and the Report

and Recommendation were in fact made public.

In any event, as detailed above, plaintiff had adequate process available to her in

the form of available hearings both pre- and post-termination.  It is undisputed that

plaintiff did not commence a proceeding pursuant to Article 78 to challenge the Hearing

Officer's recommendation or the District's ratification of the recommendation (Doc. 95-1

at ¶ 113), despite her ability to do so under New York state law.  N.Y. Civ. Serv. Law

Section 76.  The ability to pursue an Article 78 proceeding  "provides the requisite post-

deprivation process—even if [plaintiff] failed to pursue it." Anemone v. Metro. Transp. Auth., 629 F.3d 97, 121 (2d Cir. 2011).

Accordingly, defendants are entitled to summary judgment on plaintiff's stigma-plus claim.

X.    New York Labor Law Claims (Count XIV)

Plaintiff contends defendants violated NYLL §§ 201-d(2)(d) and 215.  (Doc. 62 #¶¶ 504–16).  At the outset, defendants correctly point out that plaintiff's opposition contains no argument opposing defendants' motion for summary judgment on the § 215 claim.  (Doc. #114 at 14).  By failing to respond to defendants' showing on that count, plaintiff has abandoned it.  See, e.g., Nance v. N.Y. Pub. Int. Rsch. Grp. Fund, Inc., 2025 WL 965883, at *6 (S.D.N.Y. Mar. 31, 2025) (arguments not opposed in response brief are deemed conceded).

Defendants further argue plaintiff's Section 201-d(2)(d) claim fails as a matter of law because plaintiff cannot establish she engaged in union activity or made complaints of labor law violations.

The Court agrees.

NYLL § 201-d(2)(d) prohibits employers from terminating or otherwise discriminating against an employee because of membership in a union.

Plaintiff's Section 201-d(2)(d) claim relies on two categories of conduct: (i) internal emails and complaints about workplace conditions, and (ii) requests for union representation at the suspension meeting on March 15, 2023.  Even viewed in plaintiff's favor, plaintiff's Section 201-d(2)(d) claim fails as a matter of law.

First, plaintiff has not shown she engaged in protected union activity. The statute protects membership in a union or the exercise of specified statutory rights. Plaintiff's complaints "regarding the terms and conditions of her employment" are not the sort of concerted union activity or invocation of a specifically protected statutory union right necessary to trigger Section 201-d protection. Second, plaintiff has not identified any adverse action that was taken on account of plaintiff's alleged deprivation of union representation at the March 15, 2023, suspension meeting.

Accordingly, defendants are entitled to summary judgment on plaintiff's NYLL §§ 201-d(2)(d) and 215 claims.

XI.     Remaining Claims

Although defendants nominally moved for summary judgment with respect to all claims in the Second Amended Complaint (Doc. #104), they do not make any specific argument as to why they are entitled to summary judgment with respect to four causes of action alleged in the complaint. Those include: unlawful discrimination and retaliation in violation of the PWFA (Count IV); unlawful discrimination and retaliation in violation of the FLSA and NYLL § 206-c (Count VI); and Section 1983 claims for violation of the Equal Protection Clause for religious and pregnancy discrimination (Counts IX and X).

Notwithstanding that there is some overlap between these claims and the claims which defendants did specifically argue should be dismissed, the Court declines, at this time, to dismiss them. To prevail on a motion for summary judgment, a movant must specifically identify relevant facts and explain why those facts justify granting summary judgment under the relevant laws. It is not the Court's role to raise arguments for parties represented by counsel. Xiamen ITG Group Corp., Ltd. v. Peace Bird Trading Corp., 2025 WL 3460317, at *3 (E.D.N.Y. Sept.

37

12, 2025).  However, if appropriate, the Court may be willing to reconsider whether summary judgment should be granted as to these claims.

## CONCLUSION

The motion is GRANTED IN PART and DENIED IN PART.

To summarize:

Defendants are entitled to summary judgment on plaintiff's (i) Section 1983, Title VII, and NYSHRL religious discrimination claims (Counts I, III, XII); (ii) PDA and NYSHRL pregnancy discrimination claims (Counts IV and XIII); (iii) Title VII, NYSHRL and Section 1983 retaliation claims (Counts V, XI, XII, and XIII); (iv) FMLA retaliation claim (Count VIII); (v) Section 1983 Stigma-Plus claim (Count II); and (vi) NYLL §§ 201-d(2)(d) and 215 claims (Count XIV).

Defendants are not entitled to summary judgment on plaintiff's FMLA interference claim (Count VII).  That claim will proceed.

The remaining claims, see supra Section XI, shall also proceed, at least for now.

The Court will conduct a case management conference on **June 23, 2026, at 2:30 p.m.**, to be held in person at the White Plains courthouse, Courtroom 620, at which time counsel shall be prepared to discuss how to proceed with the remaining claims, as well as what good faith efforts they have made and will continue to make to settle this case.  To be clear, counsel are directed to discuss settlement in good faith prior to that date.

38

The Clerk is instructed to terminate the motion.  (Doc. #104).

Dated: May 22, 2026
       White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge